### In re GANNON.

District Court, E. D. Pennsylvania.  July 10, 1928.

No. 144.

1. **Extradition** ⬥13—**Right to bail in extradition cases is purely statutory, and not being given by statutes, does not exist as a right.**

The right to bail given to those charged with crime is restricted to offenses against the United States, and any corresponding right in extradition cases is purely statutory, and since statutes fail to expressly give the right, it does not exist as a right of the prisoner.

2. **Bail** ⬥39—**Bail bond is "process" to give assurance of attendance, so that there may be submission to court's decrees.**

A bail bond is process, and has no other function than to give assurance of prisoner's attendance in court, so that there may be submission to the decrees of the court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Process (in Practice).]

3. **Extradition** ⬥13—**Prisoner, sought to be extradited to foreign country for offense bailable under laws of state and foreign country, will be granted bail while awaiting hearing.**

Prisoner arrested and held awaiting hearing, to determine whether he should be extradited to a foreign country under a charge of obtaining money under false pretenses, which is a bailable offense under laws of the state and laws of the foreign country, will be released on bail, where some time must necessarily elapse before the hearing because witnesses must be brought from a distance.

Extradition. Proceeding against Barney Gannon. On motion to admit prisoner to bail pending hearing. Motion granted.

Bernard L. Lemisch and Michael Serody, both of Philadelphia, Pa., for relator.

G. Plantou Middleton, of Philadelphia, Pa., for British consulate.

DICKINSON, District Judge. In this cause we have had the benefit of a very well considered and helpful argument against the existence of the power to admit to bail, which has produced in us the feeling that we ought to be convinced, but are not. The prisoner is charged with the commission of a criminal offense in another country. He was here arrested, and is held awaiting a hearing to determine whether he should be extradited. The witnesses must be brought from a distance, so that some time must necessarily elapse before it can be known whether the prisoner is the proper subject of extradition proceedings. There is no time within which the hearing must be held short of two months. In the meantime is he to be held without bail? The offense charged is that known as the obtaining of money under false pretenses. This is a bailable offense under the laws of Pennsylvania, as it is under the laws of the country where the offense is charged to have been committed.

The question presented divides itself into two. (1) Has this court power to accept bail as an assurance of the presence of the prisoner at the hearing to be hereafter held? (2) If the power exists, should it be exercised?

[1] We have so framed the questions because we are convinced that it has been authoritatively held for us that the prisoner has no legal right to demand his enlargement upon bail under the laws of the United States. The question of the power of the court to

admit to bail is one which arises out of the treaties between the United States and Great Britain and the acts of Congress passed in furtherance of the objects of the treaties. There is no need to examine into the specific provisions of the treaties or of the acts of Congress, because counsel are agreed upon their effect. The questions may thus be broadly faced.

It has been ruled, as before observed, that the right to bail given to those charged with crime is restricted to offenses against the United States, and that any corresponding right in extradition cases is purely statutory. The pertinent acts of Congress omit to expressly give the right and in consequence it does not exist as a right of the prisoner. Wright v. Henkel, 190 U. S. 40, 23 S. Ct. 781, 47 L. Ed. 948. An English case is, however, quoted as laying down the doctrine that a court has power to admit offenders to bail, and is not indebted for the possession of this power to any statute. Queen v. Spilsbury [1898] 2 Q. B. D. 615.

It has, however, been definitely held by the District Court for the District of Colorado that the power of a United States court to "allow" bail must rest upon a statute, and that the absence of a negative in the act is not enough, but the power must have been expressly conferred upon the courts by the statute, or otherwise they do not possess it. In re Carrier, 57 F. 578.

This case would be a sufficient guide to us, if we were able to find ourselves convinced by it. The reasoning is clear enough to lead to its stated objective that the statute expresses in effect the duty of the court to send the prisoner to be dealt with in the foreign jurisdiction, and not to substitute a bond for his appearance. That this follows the judgment of the court that he should be extradited we think must be admitted, but that it further follows that he must be denied bail pending his hearing is the proposition of the soundness of which we are unconvinced. We say this with diffidence and wholly because of compulsion inasmuch as it is said in Wright v. Henkel, supra, "that the same reasons" (for holding that the statute denies bail after the judgment of extradition) "would seem generally applicable to release pending examination."

We take this language to be directed to the question of the exercise of the power to admit to bail, not to its existence, because in Wright v. Henkel, the court expressed its unwillingness "to hold that the power" to admit to bail was wholly statutory. It is, of course, true that there is a like need to

assure the presence of the prisoner at the hearing as there is to give effect to an order of extradition, because you cannot have one without the other. There is, however, a great difference in the accepted modes of enforcing his attendance. The difference is that between enforcing a defendant's presence at his trial and his submission to the punishment imposed by a sentence after conviction. We see no significance in the statutory provision for bail to answer for trial in removal cases from one district to another, and the absence of a like provision in extradition cases. It is true that a court would have no power (other than statutory) to hold a defendant for trial before another court, but it does not follow that it could not thus enforce his attendance at a hearing in the removal proceeding.

The "judicial power" is conferred by the Constitution upon the courts of the United States. The framers of the Constitution were familiar with common-law concepts and the words and phrases employed by common-law lawyers. The words chosen are "courts" and "judicial power." Whatever else may be said of the jurisdictional authority (in the power sense) of the judiciary, the meaning of the words and phrases used must be sought for in the literature of what we call the common law. Courts cannot function without the use of process, and any tribunal which has judicial powers can enforce attendance by holding the party to bail. There are different sorts of the kind, the general purpose of which is to assure the presence of the parties necessary to a judgment. These vary from a subpœna to require the presence of a witness to bench warrants and attachments which operate not on his will but bring "his body."

[2] A bail bond is process, and has no other function than to give assurance of attendance, so that there may be submission to the decrees of the court. In a case such as that before us, if the judgment reached is that the prisoner be extradited, the injunction of the statute must be followed; but if such judgment cannot be rendered, and the hearing must be held at a later date, then the court must enforce the attendance of the prisoner in some way, and we see no difference (again in the power sense) between one form of compulsion and another. The only difference is, as we have said, that one form acts upon his body; the other upon his will. It is true that a bond may not be effective but no more may a commitment. The prisoner may jump his bail, but so likewise he may escape from his jailers. The process should, of course,

·be effective for its intended purpose, but to make it such goes to the exercise of the power of the court, not to the existence of the power. Substantial bail, we have no doubt, will serve its purpose.

Should the prisoner default, he will not only forfeit the penal sum of his bond, but ·will inflict upon himself a punishment many times heavier than any which would follow conviction for the offense with which he is charged, for he must thereafter elude the vigilance of the officers of each and both of two governments whose resources are practically unlimited. Against the small risk of default there is the injustice of imposing imprisonment in advance of a hearing which must be delayed for some time.

[3] We feel constrained to admit the prisoner to bail pending a hearing and feel also that this course is in accordance with-the teaching of the Wright Case. We are not unmindful that the United States is under a treaty obligation to send in proper cases fugitives from the justice of Canada, there for trial for any offenses committed against the laws of that country, and that Great Britain would do the same for us in like cases, and also that the courts are bound to do their part in meeting this obligation. Both countries are, however, alike in their regard for the liberty of every citizen or subject until the right to it is found after hearing to have been forfeited.

We owe to the industry displayed by counsel the duty of a careful reading of the other cases to which we have been referred, among which are In re Wright (C. C.) 123 F. 463; In re Mitchell (D. C.) 171 F. 289; In re Chow (C. C.) 25 F. 77; U. S. v. Yee Yet (D. C.) ·192 F. 577. We have given them full consideration, without, however, a change in the views above expressed.

The conclusion reached is that the prisoner should be held for a further hearing, and that until this can be had he be enlarged upon entering bail, with surety, and condition approved ·by the court, in the sum of $10,000. An appropriate order in accordance with this opinion may be submitted.