Mohammad MAKARIAN, Petitioner,

v.

James B. TURNAGE, Jr., District Director, Immigration and Naturalization Service, Respondent.

Civ. No. 85–2194–K(IEG).

United States District Court,
S.D. California.

Nov. 7, 1985.

Bert D. Greenberg and Daniel G. Gold, Frank, Greenberg & Simone, Beverly Hills, Cal., for petitioner.

Peter K. Nunez, U.S. Atty., and Beth L. Levine, Asst. U.S. Atty., San Diego, Cal., for respondent.

## ORDER

KEEP, District Judge.

Petitioner, Mohammad Markarian, is being held without bail by the Immigration and Naturalization Service (INS) pending completion of deportation proceedings presently before the Ninth Circuit. Petitioner filed a petition on September 13, 1985, seeking habeas corpus relief in the federal court. This order denies the petition.

## PROCEDURAL HISTORY

Petitioner, a native and citizen of Iran, entered the United States on August 6, 1977 as a nonimmigrant student, attending Donnelly College in Kansas City, Kansas. Following his marriage to Maria Ann Franco, a United States citizen, petitioner's status was adjusted to that of a permanent resident on August 24, 1978 and petitioner received his alien registration card (green card).

According to petitioner's wife, within two weeks of receiving his green card, petitioner beat his wife and threw her out of their apartment. Administrative Record [hereinafter cited as AR] 213. Petitioner's wife filed for annulment alleging that petitioner married her only to obtain his green card. AR 215. Petitioner, however, then sought a divorce, the decree of divorce becoming final on June 11, 1979.

Although the record is not entirely clear, petitioner states in his declaration in support of this petition that he moved from Kansas City to San Diego in August of 1979. Declaration at 2. The record indicates that petitioner notified the Postal Service but not the INS of the change of address.

In October of 1979, petitioner received notice through the mail from the INS that his permanent resident status was to be

rescinded for lack of a bona fide marriage to a United States citizen and that failure to respond would authorize the INS to make the status adjustment without further notice. Although petitioner states that the Legal Aid Office in Chula Vista, California was to handle the matter for him, the INS received no response and rescinded his permanent resident status in January of 1980. Petitioner claims never to have received the January, 1980 rescission notice. A December, 1980 order to show cause why petitioner should not be deported was mailed to petitioner but the letter was returned. The notice and order were mailed to petitioner's Kansas City address, the last known address of which the INS had notice.

Petitioner states that he began employment in August of 1980 with National Steel and Shipbuilding Company in San Diego and that his green card was validated at that time.

While in the San Diego area, petitioner married his second wife, Margo Verhock, in October of 1982. The marriage was soon stormy. Petitioner left Margo because of her alleged infidelities, and states that he went to Montana to attend college. Petitioner returned approximately a month later, but attempts at reconciliation failed. According to his wife and police reports, petitioner threatened to kill his wife, child and in-laws; he also threatened to blow up his wife's house and to throw acid in her face. Additionally, petitioner beat his father-in-law in an extortion attempt. AR 270–73, 299–300. Petitioner pled guilty to disturbing the peace in May of 1983 and was put on probation for one year. Petitioner and his second wife subsequently were divorced.

Based on various incidents allegedly in violation of his probation (e.g., further extortion attempts), petitioner was ordered to appear in court to show cause why his probation should not be revoked. Petitioner states that he did not receive notice of the order because it was sent to an old address. Declaration at 3. Petitioner failed to appear at the order to show cause hearing. The court revoked his probation and issued a bench warrant for his arrest on May 30, 1984.

After his arrest on August 8, 1984, a search of petitioner's storage locker yielded various weapons, photographs of petitioner dressed in paramilitary garb and brandishing weapons, and printed material dealing with such activities as the manufacture of explosive devices and guerrilla warfare.

On August 23, 1984, after finding that petitioner had violated the terms of his probation by carrying weapons and committing violent acts on others, San Diego County Municipal Court Judge Cazares sentenced petitioner to 90 days' custody and extended probation for three years.

While petitioner was in custody pursuant to his probation violation, the INS served him with the December 1980 order to show cause why he should not be deported. The INS then assumed custody of petitioner.

The District Director ordered petitioner held without bond. On October 19, 1984, the Immigration Judge denied petitioner's request for a bond redetermination, finding ample evidence in the record (e.g., proclivity toward violence, possession of weapons, and alleged boasts to his wife about terrorist affiliations, AR 299–300) to suggest that petitioner was engaged in subversive or terrorist activities. On February 1, 1985, the Board of Immigration Appeals agreed that petitioner should be detained without bail pending resolution of the deportation issue on the grounds that petitioner constitutes a poor bail risk and a threat to national security.

Petitioner's habeas corpus petition seeks his release pending the final decision as to his deportability from the United States.

## NEED FOR EVIDENTIARY HEARING

■ A person detained by the INS pursuant to an order of deportation may obtain judicial review in the district courts by habeas corpus proceedings. 8 U.S.C. § 1105a(a)(9); *Johns v. Department of Justice*, 653 F.2d 884, 895 (5th Cir.1981). Although the district court may, if neces-

sary, hold a hearing regarding evidence not reflected in the record, a habeas petition directed at the INS usually is reviewed only by reference to the administrative record. *Johns,* 653 F.2d at 896. *See also O'Rourke v. Warden,* 539 F.Supp. 1131, 1135 (S.D.N.Y.1982) (scope of habeas review limited to whether INS decision has reasonable foundation in the record), cited with approval by the Ninth Circuit in *National Center for Immigrants Rights v. I.N.S.,* 743 F.2d 1365, 1371 (9th Cir.1984).

■ *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) requires that the district court hold an evidentiary hearing regarding a *state* prisoner's habeas petition if:

(1) the state hearing did not resolve the merits of the factual dispute;

(2) the record as a whole does not fairly support the state factual determination;

(3) the state fact-finding procedure did not provide a full and fair hearing;

(4) the petitioner makes a substantial allegation that new evidence has been discovered;

(5) the state courts did not adequately develop the material facts; or

(6) it otherwise appears for any reason that the state did not afford the petitioner a full and fair hearing on the facts.

372 U.S. at 313–18, 83 S.Ct. at 757–60. The *Townsend* criteria generally apply to federal prisoners as well. *Kaufman v. United States,* 394 U.S. 217, 227, 89 S.Ct. 1068, 1074, 22 L.Ed.2d 227 (1969).

■ This court finds that the administrative record in the instant case reveals that petitioner has had numerous opportunities to present his version of the facts and that the material facts have been fully developed. The record reveals the pertinent facts regarding the custody determination; none of the *Townsend* criteria are apparent. Accordingly, this court holds that an evidentiary hearing is unnecessary.

## THE STANDARD OF REVIEW

■ The district courts do not review bond determinations pending the resolution of deportation proceedings *de novo.* Rather, the agency's exercise of discretion is presumed correct and the district court merely decides whether "any basis in fact" exists for the agency determination. *United States ex rel. Barbour v. District Dir. of I.N.S.,* 491 F.2d 573, 577–78 (5th Cir.), cert. denied, 419 U.S. 873, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974). *See also Hernandez-Avila v. Boyd,* 294 F.2d 373, 376 (9th Cir. 1961) (finding by agency that petitioner should be deported sufficient to hold him pending judicial review of his status; bail determination by agency pending deportation review "can be overturned only when there is abuse of discretion"); *O'Rourke,* 539 F.Supp. at 1135 (district court review of bail decision in habeas corpus proceedings "limited to the determination whether the agency's decision is supported by, or has a reasonable foundation in, the record").

## REVIEW OF THE AGENCY'S DECISION IN THIS CASE

■ Pending a final decision of deportability, an alien may be held in custody or released on bond of not less than $500 or released on conditional parole. 8 U.S.C. § 1252(a). The Attorney General and his delegates have "wide discretion" in determining whether and under what conditions to release a person pending the final deportability determination. *United States ex rel. Barbour,* 491 F.2d at 577. Generally, however, a person should be detained without bail only upon a finding that he is a poor bail risk or a threat to national security. *See Barbour,* 491 F.2d at 576–77; *O'Rourke,* 539 F.Supp. at 1135.

■ This court finds the BIA's decision to hold petitioner without bail is supported by facts on the record which indicate that petitioner is a poor bail risk. Factors to be considered in evaluating the risk of flight posed by an individual pending final resolution of deportation include: family ties and community roots in the United States; em-

ployment history; length of time in United States; length of time remaining to complete deportation proceedings; criminal record; prior history of immigration violations; manner of entry into this country; and prior history of attending court proceedings. *O'Rourke,* 539 F.Supp. at 1135–36. *See also Hernandez-Avila,* 294 F.2d at 376–77 (wherein the court found defendant was a poor bail risk when he had no ties to the community and a history of avoiding prosecution).

 The record reveals that on various occasions petitioner has failed to respond to governmental requests that he appear and that the government has been unable to locate him for substantial periods of time. Petitioner attempts to explain these failures to appear and failures to locate him as not his fault. However, this court holds that the BIA reasonably found that the pattern demonstrates a lack of responsibility as well as disrespect for governmental proceedings. Petitioner's failure to adhere to the terms of his probation for disturbing the peace likewise evidences his disregard of the law. Given the history of family violence, discord and threats, the BIA certainly had support in the record for finding petitioner's asserted family ties to his daughter to be insubstantial. The record also indicates that petitioner probably has not worked since 1982 and that he has been collecting unemployment. AR 59–60, 256, 272. In sum, a significant foundation exists in the record for the BIA's decision that petitioner's presence pending the deportation proceedings cannot be assured other than by keeping petitioner in custody. This court finds no abuse of discretion in that determination.

Similarly, this court cannot say that no basis in the record exists for the BIA's determination that petitioner is a threat to national security. Petitioner attempts to justify the guns found in plaintiff's storage locker as "commonly used in game hunting;" the photographs of plaintiff in paramilitary clothing he states were taken on an "outing" with a friend, a Vietnam veteran; the guerrilla literature he states belonged to someone else. Taken in conjunction with petitioner's history of recourse to violence and his wife's statement of petitioner's boasts of terrorist affiliations, however, these items reasonably support the BIA's finding that petitioner constitutes a threat to national security.

Accordingly, the court holds that the BIA has not abused its discretion in affirming the INS decision to hold petitioner without bond pending resolution of deportation proceedings in the Ninth Circuit, and petitioner's habeas corpus petition is denied.

IT IS SO ORDERED.