**In the Matter of the EXTRADITION OF Marc ROUVIER.**

**No. 93 CR 410.**

United States District Court, N.D. Illinois, E.D.

Oct. 22, 1993.

Daniel George Martin, Chicago, IL, for defendant.

Debra Riggs Bonamici, U.S. Atty's. Office, Chicago, IL, for U.S.

## DETENTION ORDER

HOLDERMAN, District Judge:

The United States of America, by Michael J. Shepard, United States Attorney for the Northern District of Illinois ("government"), brings this emergency motion for this court to reconsider the ruling of Magistrate Judge Joan H. Lefkow which granted the motion of respondent, Marc Rouvier ("Rouvier"), for release on bond pending extradition proceedings. The government's motion is granted. Rouvier is hereby ordered held without bond pending extradition proceedings.

### FACTS [1]

Rouvier is a citizen of France. According to the government of France, during the first six months of 1992, Rouvier, in his capacity as managing director of the S.A.R.L. Sovipro, negotiated the purchase of wine in bulk from nineteen societies dealing with wine producers in the county of Var, France. After receiving the wine, Rouvier paid the wine producers with bills of exchange drawn by the S.A.R.L. Bouffet, a company in Lezignan Corbieres, France, and endorsed by a man named Michel Bernard. The wine producers later found that the bills of exchange given to

---

1. Unless otherwise indicated, the facts are taken from the government's brief, which is based in part upon the French arrest warrant. Rouvier, in substance, concurs with the government's statement of the procedural history. (Rouvier's Memorandum in Response, p. 1.) The facts disputed by Rouvier are discussed later in this opinion.

them by Rouvier were non-negotiable and, thus, worthless.

On August 7, 1992, the managing directors of the wine societies demanded an explanation from Rouvier concerning the non-negotiable bills of exchange. Rouvier claimed that he, too, had been defrauded by the endorser of the bills, Michael Bernard, and gave the directors his word that he would resolve the situation by the following Monday (August 10, 1992). The night of August 7, 1992, Rouvier disappeared.

On the following day, August 8, 1992, the managing directors of the societies lodged a complaint against Rouvier with the French authorities.

On August 9, 1992, the day before Rouvier was supposed to rectify the matter of the worthless bills of exchange with the wine societies, he was admitted to the United States as a visitor.[2] The following facts relating to Rouvier's conduct in the United States are taken from the stipulated facts filed by the parties on October 21, 1993.

On August 9, 1992, Rouvier purchased an American Airlines ticket to Las Vegas. (Stip. # 6.) On September 8, 1992, Tammy Villalobos, an American citizen, obtained a license for her marriage to Rouvier in Zion, Illinois. (Stip. # 8.) On September 19, 1992, Rouvier was married to Tammy Villalobos, a United States citizen, and established residence in the United States. (Stip. # 10.) On October 5, 1992, Tammy Villalobos filed an application for an immediate relative visa for Rouvier on the basis of their marriage on September 19, 1992. (Stip. # 11.) On October 30, 1992, the application for an immediate relative visa was approved. (Stip. # 13.) On November 10, 1992, Rouvier filed an application for adjustment of immigration status to that of lawful permanent resident on a conditional basis. (Stip. # 14.) The application

included biographical information and fingerprints. (*Id.*) The biographical information stated that Rouvier was self-employed as a "distributor." (*Id.*) On December 2, 1992, the biographical information and fingerprints submitted by Rouvier were sent to various U.S. agencies, including the FBI, State Department, and the U.S. Embassy in France. Whether or not the U.S. Embassy contacted any French authorities is not known. (Stip. # 16.) In December, 1992, Rouvier began working full-time as a translator for Systems Software Associates in Chicago, Illinois. (Stip. # 17.) On February 4, 1993, Rouvier's status was adjusted to lawful permanent resident on a conditional basis, based on the marriage to Ms. Villalobos. (Stip. # 18.)

On August 10, 1993, French authorities charged Rouvier with fraud, forgery of commercial and bank documents, and use of forged documents, in violation of Articles 405 and 150 of the French Penal Code. The complaint charged that the amount of Rouvier's fraud was 13,371,121 francs.[3] On the same date, Laurence Godron, the French Magistrate at the County Court at Draguignan, France issued a warrant for Rouvier's arrest.

### Procedural History in United States

On March 26, 1993, the French government sent a request through diplomatic channels seeking Rouvier's provisional arrest with a view toward extradition pursuant to the Extradition Convention between the United States and France of January 6, 1909, as supplemented, February 12, 1970; 22 UST 407, TIAS 7075 ("Treaty").

On June 4, 1993,[4] based on the French government's request, and on federal law implementing such treaties, 18 U.S.C. § 3184 *et seq.*, the United States filed a complaint and sought a warrant for Rouvier's provision-

---

2. Facts concerning Mr. Rouvier's entry and establishment of residence in the U.S., and his marriage here, were submitted to Judge Lefkow by both government and defense counsel in the form of proffered testimony and stipulated exhibits.

3. Government counsel proffered to Judge Lefkow information obtained from Reusch International Financial Services concerning the value of the

amount of loss charged in the French Arrest Warrant. According to Reusch International, given the exchange rate on October 14, 1993, 13,371,121 French Francs is worth $2,349,-933.39 in U.S. currency.

4. This date has been presented as March 4, 1993 in both the government's brief and the stipulated facts. A review of the underlying exhibit indicates June 4, 1993 is the correct date.

al arrest. A warrant was issued by Magistrate Judge Elaine Bucklo on June 4, 1993.

On October 13, 1993, Rouvier was arrested pursuant to the warrant issued by Judge Bucklo, and an initial appearance was held before Magistrate Judge Joan H. Lefkow on the same day. At the initial appearance, Rouvier was advised of the charges against him and his right to waive extradition.

Pursuant to the Treaty and applicable federal law, the government requested that the hearing to determine Rouvier's extraditability be scheduled ten days after the expiration of the deadline established in the Treaty for the submission of supporting documents by the government of France. Under the Treaty, this deadline is 40 days after Rouvier's provisional arrest.

Rouvier, by this counsel, Daniel G. Martin of the Federal Defender's office, requested release on bail pending the extradition hearing. The government opposed Rouvier's request, and Judge Lefkow scheduled a detention hearing in the case for October 14, 1993.

Judge Lefkow heard proffers of evidence, received exhibits, and heard argument from both government and defense counsel. She then invited defense counsel to file a written brief in support of his motion, and continued the hearing to October 18, 1993.

On October 18, 1993, Judge Lefkow ruled from the bench on Rouvier's motion. She ordered that Rouvier be released on $50,000 (ten percent cash) bond pending the extradition hearing. At the government's request, Judge Lefkow stayed her order through the end of the day in order to allow the government to decide whether to seek reconsideration of her ruling. On October 19, 1993, Judge Lefkow continued the stay of her order pending a decision by this court.

This court has been called upon to decide this matter on an expedited basis based on a very limited record. As Judge Lefkow ruled from the bench, there is no written opinion by which this court can review her analysis and findings of fact. Further, given the expedited nature of the proceeding, no transcript has of yet been provided. The parties did prepare a formal stipulation of facts to aid the court in its review. Thus, this court proceeds on the basis of the government's and Rouvier's memoranda, the stipulation and the limited exhibits.

## ANALYSIS

■ The federal statute implementing United States extradition treaties with other nations, Title 18 U.S.C. § 3184 *et seq.,* does not provide for bail. Because an extradition proceeding is not a criminal case, the Bail Reform Act of 1984 does not govern. *Kamrin v. United States,* 725 F.2d 1225, 1227–1228 (9th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). Given the absence of statutory law governing bail in international extradition proceedings, the question is determined based on federal common law.

The United States Supreme Court and the federal courts of appeals have long held that bail should not ordinarily be granted in foreign extradition cases. *See Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *Martin v. Warden, Atlanta Pen.,* 993 F.2d 824, 827 (11th Cir.1993) (presumption against bail in extradition cases); *Sahagian v. U.S.,* 864 F.2d 509, 514 n. 6 (7th Cir.), *cert. den.* 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989).

■ Only the presence of special circumstances will justify the granting of bail. *Martin,* 993 F.2d at 827; *Koskotas v. Roche,* 931 F.2d 169, 175 (1st Cir.1991); *Salerno v. United States,* 878 F.2d 317, 319 (9th Cir. 1989); *Sahagian,* 864 F.2d at 514 n. 6. "Special circumstances include the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process." *Salerno,* 878 F.2d at 317. That the detainee is not a flight risk is not a special circumstance warranting release. *Id.* at 318.

■ The case that apparently received the most emphasis in the proceeding below was *In the Matter of the Extradition of Kamel Nacif–Borge,* 829 F.Supp. 1210 (D.Nev.1993). The *Nacif–Borge* court conducted a lengthy review of extradition jurisprudence. The court began by noting that "[t]he primary concern in an international extradition mat-

ter is to deliver the extraditee to the requesting nation", and that the statute governing international extradition proceedings, Title 18 U.S.C. § 3184, contains no provisions for bail. *Id.* at 1213. This court agrees that the primary concern is delivering the extraditee to the requesting country; there is a strong national interest in fulfilling all treaty obligations.

The *Nacif–Borge* court also accepted the truism that bail is rarely granted in extradition cases, and only granted in the presence of "special circumstances". *Id.* at 1213. Upon a survey of the case law, the court came to the conclusion that the following situations constitute "special circumstances":

1. that extraditee displays a high probability of success on the merits;

2. the extraditee has suffered a serious deterioration of health;

3. the extraditee has shown there is an unusual delay in the appeals process;

4. the extraditee has shown the extradition proceeding will be unusually long and complex;

5. the extraditee has shown the country seeking extradition would grant bail in a comparable extradition case dealing with an equivalent charge; and

6. the extraditee has shown by clear and convincing evidence bail is available for the substantive offense in the country seeking extradition.

*Nacif–Borge* at pp. 1216–1219.[5]

The court concluded that because bail would be available to Nacif on the underlying offense in Mexico, a "special circumstance" existed. *Id.* at 1221. On concluding that a special circumstance existed, the court stated that bail could only be granted if there was no risk of flight and no danger to the community. *Id.* The court went on to determine that Nacif posed no risk of flight or danger to the community and granted bail. *Id.* pp. 1221–1222.

Judge Lefkow apparently accepted the *Nacif–Borge* court's reasoning and granted bail to Rouvier. (Government's Motion to Reconsider, p. 14.) The precise basis for Judge Lefkow's decision is unclear. While the *Nacif–Borge* result was largely based on the availability of bail in the country seeking extradition, the government states that, although Judge Lefkow raised the issue, neither side presented any evidence concerning the availability of bail in France.[6] (Government's Memorandum in Reply, p. 6, n. 4.)

This court concludes that the "bail availability" special circumstance formulated by the *Nacif–Borge* court is improper, and thus unavailable to Rouvier. This court first notes that the *Nacif–Borge* court based its decision on the case *In re Gannon,* 27 F.2d 362 (E.D.Pa.1928). The *Gannon* court found that a detainee could obtain bail based on the fact the underlying offense was bailable in both the state of incarceration (Pennsylvania) and the country seeking extradition (Canada). 27 F.2d at 362. The *Gannon* court was particularly moved by the fact the detainee would be forced to wait a considerable time for his extradition hearing, as the key witness had a considerable distance to travel. *Id.* The court further waxed philosophical about bail and custody as means of assuring presence before the court, and somewhat equated them, noting that while a defendant could "jump" bail, he could also escape from custody. *Id.* at 363.

This court concludes that the *Gannon* case is not relevant. As an initial matter, this court notes detention is a far more certain method of insuring the presence of a defendant than bail. This court also notes the risk of lengthy delays that concerned the *Gannon* court is not present here. Most significantly, however, this court concludes that the *Gannon* court's rule conflicts with current federal law. Under the *Gannon* rule, *most* extraditees would be entitled to bail. This directly

---

5. The court rejected the following matters as not constituting special circumstances: (1) the timing of the provisional arrest (as indicative of a bad motive by country seeking extradition); (2) offers of compromise by extraditee; (3) seriousness of the offense; (4) character of the extraditee. *Id.* at pp. 1217–1220.

6. The government maintains that the bulk of Rouvier's arguments to Judge Lefkow pertained to his lack of flight risk. (Government's Memorandum in Reply, p. 3.) As stated earlier, flight risk is not a special circumstance.

contradicts Supreme Court and federal appellate court decisions which conclude bail is the exception rather than the rule. The *Gannon* rule would also force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense. In *Sahagian, supra,* the defendant claimed the extradition treaty between the United States and Spain was unconstitutional because it did not guarantee that Spain would provide him the same rights he would receive in an American court. 864 F.2d at 514. The Seventh Circuit rejected this claim on the basis of comity, and stated

> "[i]t is hardly reasonable to expect the courts of Spain (or the United States) to constantly alter the procedures under which it conducts extradition proceedings depending upon the citizenship of the person sought to be extradited." *Id.*[7]

Accepting the *Gannon* rule would lead to just such an unacceptable result.

Rouvier responds to the government's motion with a four-page brief arguing Judge Lefkow's decision should be affirmed. A good portion of the brief is devoted to emphasizing that Rouvier is not a flight risk, and asserting that this can weigh in favor of finding a special circumstance. Rouvier also emphasizes that Judge Lefkow, like the court in *Nacif–Borge,* based the finding of a special circumstance on a combination of several factors. (Rouvier's Memorandum in Response, pp. 3–4.) Rouvier also stresses another "several factors" case in support of this contention, *United States v. Taitz,* 130 F.R.D. 442 (S.D.Cal.1990).

As an initial matter, this court notes that the *Nacif–Borge* court, while noting that an accumulation of several factors may constitute special circumstances, apparently based its finding of special circumstances on one factor—the availability of bail in Mexico for the substantive offense. *Nacif–Borge* at 1221. This court has rejected that special circumstance.[8]

Further, Rouvier does not provide an extensive discussion of what the "several factors" are in his case that justify the finding of special circumstances. He does, however, list five factors in summary format:

A. He has been living legally in the United States since August 8, 1992 under his lawful name of Marc Rouvier. He currently has ties of nationality, family, *and* economic interest in this country.

B. He has been diagnosed with a potentially serious heart condition. He is under the care of a physician and has been prescribed with the heart medication Visken, which he must take on a daily basis.

C. Due to his strong familial and economic ties to the United States (he is married to an American citizen and is employed full-time with Systems Software Associates in Chicago), he is clearly not a risk of flight.

D. The information alleged in the French affidavit underlying the instant complaint is false and contrary to the facts presented to the court at the detention hearing. For instance, the complaint repeatedly alleges that Mr. Rouvier is exclusively known under the name of "Marc Villalobos." That allegation was never substantiated below. Quite the contrary, Mr. Rouvier presented a plethora of documentation to indicate that he has lived openly, exclusively, and legally in the USA under the name of Marc Rouvier.

E. Before leaving his country, defendant complied with all legal procedures necessary to facilitate his departure from France and entry into the USA as a permanent resident alien.

(Rouvier's Memorandum in Response, p. 2.)

Factors A and C relate to flight risk, which, as stated earlier in this opinion, is not a special circumstance. *See Salerno,* 878 F.2d at 318. Factor B is more significant, as

---

7. The court also stated such a rule would be difficult, if not impossible, to enforce in the international community. *Id.*

8. Even if the court had accepted the availability of bail in France as a special circumstance, no evidence of the availability of bail in France has been submitted by either party.

a severe health problem can be a special circumstance. However, Rouvier's own description of the problem makes it appear less than severe.[9] Rouvier describes the problem as "potentially" serious, and indicates it is controlled with daily medication. Daily medication can be provided in detention. Thus, the condition is not serious enough to constitute a special circumstance. *See Nacif–Borge*, 829 F.Supp. at 1217 (citing *United States v. Kidder*, 869 F.2d 1328, 1330–31 (9th Cir.1989) (to avoid incarceration defendant "must show that no constitutionally acceptable treatment can be provided while he is imprisoned."))

Factor E involves the circumstances of his departure. Given that Rouvier had not been charged as of the day of his departure, this factor is not probative.

Factor D attacks the underlying French affidavit. Rouvier maintains that it is false. The only example of falsity given by Rouvier, however, is that the affidavit indicates he lived under an alias in the United States, while he presented evidence that he lived openly under his own name. Taking Rouvier's contention as true, this lone inconsistency is inadequate to show a high probability of success on the merits that would constitute a "special circumstance."[10]

Further, *United States v. Taitz*, to which Rouvier refers the court, is clearly distinguishable. The court in *Taitz* concluded a

special circumstance existed based on several factors:

1. the difficulty and complexity of the case, which involved 434 counts of fraud and a difficult treaty analysis to ascertain if the offenses were extraditable;

2. Taitz's lack of criminal record;

3. Taitz was no danger to the community;

4. Taitz had severe allergies that would be adversely effected by custody;

5. Taitz would be unable to practice his religion while incarcerated;

6. that diplomatic necessity for denying bail did not exist, as South Africa permitted bail in extradition cases.

130 F.R.D. at 444–446. As noted by the government, Rouvier has not made nearly so strong a showing.[11] (Government's Memorandum in Reply, p. 6.) This court concludes that Rouvier has not established the existence of special circumstances that warrant the granting of bail. Given this court's conclusion regarding special circumstances, there is no need to access flight risk.[12]

## CONCLUSION

For the reasons stated above, the government's motion to reconsider the order grant-

9. The government noted that the medication Rouvier takes for his condition is a commonly prescribed hypertension drug (Visken). (Government's Memorandum in Reply, p. 7.) On the morning of the hearing on October 22, 1993, defense counsel submitted a one-page handwritten letter from Rouvier's treating physician, Dr. Collete Gordon. The letter confirmed Rouvier's prescription, and, for the first time in the proceedings, identified Rouvier's ailment as Wolff–Parkinson–White Syndrome. The letter indicated that the ailment was potentially serious, particularly if Rouvier was under stress. Defense counsel conceded, however, that Rouvier has been allowed by the Bureau of Prisons to continue to take his medication while in custody. This court will enter an order, if necessary, to insure that continues. Further, defense counsel stated at the October 22, 1993 hearing that an electrocardiogram had been performed on Rouvier while in custody, and that "no change" had occurred in his condition. This indicates that Rouvier's condition has not "deteriorated" while

in custody. Consequently, Rouvier has failed to show his health constitutes a "special circumstance."

10. This court notes that persons challenging extradition have only a limited right to challenge the evidence against them. *Sahagian*, 864 F.2d 509, 514 n. 6 (citing *Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir.), *cert. den.* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

11. Interestingly, *Taitz* contradicts Rouvier's contention that absence of flight risk should be a factor that can, in addition to other factors, add up to a "special circumstance." The *Taitz* court specifically stated that special circumstances must exist *in addition to* the absence of risk of flight. 130 F.R.D. at 444.

12. The government strongly asserts that Rouvier's past conduct and limited ties to the United States indicates a strong risk of flight. (Government's Memorandum in Reply, pp. 6–7.)

ing bail is GRANTED. Rouvier is ordered detained pending his extradition hearing.