In re EXTRADITION OF
Rolf SIEGMUND.

No. CV–N–95–230–ECR.

United States District Court,
D. Nevada.

May 24, 1995.

Franny A. Forsman, Federal Public Defender by Kristine K. Smith, Asst. Federal Public Defender, Reno, NV, for Rolf Siegmund.

Kathryn E. Landreth, U.S. Atty. by Jamon A. Jarvis, Asst. U.S. Atty., Reno, NV, for U.S.

## ORDER

EDWARD C. REED, Jr., District Judge.

Rolf Siegmund was arrested in this district on March 28, 1995. The government of Austria seeks his extradition to that nation. The magistrate entered an order on April 13 ordering Siegmund held without bail pending an extradition hearing. This is an appeal from the magistrate's denial of bail.

### I. *Jurisdiction and Standard of Review*

██ The government maintains, initially, that this court lacks jurisdiction and that if Siegmund wants relief he must seek it in the court of appeals. That is partially correct: de novo review by this court of the magistrate's order is not available. 28 U.S.C. § 636(a)(1) grants to magistrates "all powers and duties conferred or imposed upon United States commissioners by law...." One such power is conferred by 18 U.S.C. § 3184, which authorizes "any magistrate authorized to do so by a court of the United States" to conduct proceedings when a for-eign government seeks the extradition of a person found within the magistrate's judicial district. Section 3184 does not mention bail, but the power to make bail determinations is within the magistrate's more general power to conduct proceedings in extradition matters, as the Bail Reform Act does not apply, *see, e.g., Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *In re Extradition of Russell,* 647 F.Supp. 1044, 1046 (S.D.Tex.1986), and the question of bail in extradition is governed instead by voluminous precedent. *See, e.g., Wright, supra; Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989); *see generally* John G. Kester, *Some Myths of United States Extradition Law,* 76 Geo.L.J. 1441 (1988); Jeffrey A. Hall, Note, *A Recommended Approach to Bail in International Extradition Cases,* 86 Mich.L.Rev. 599 (1986). Pursuant to Local Rule 500–1(c), magistrate judges in Nevada have standing authority to conduct extradition proceedings. Local Rule 510 provides for review by the district court of most decisions by a magistrate, but not of decisions made by a magistrate in matters heard by her under Local Rule 500–1. This court therefore lacks jurisdiction to review de novo the magistrate's extradition orders, including her order denying bail to Siegmund. *See, e.g., In re Extradition of Ghandtchi,* 697 F.2d 1037, 1038 (11th Cir.1983) (district court lacked jurisdiction to review magistrate's bail decision where it had no authority to do so under 28 U.S.C. § 636, 18 U.S.C. § 3184 or local rules); *In re Extradition of Krickemeyer,* 518 F.Supp. 388, 389 (S.D.Fla.1981) (no authority under local rules).

Relief is available, however, by habeas corpus. There is no direct appeal in extradition proceedings, and habeas under 28 U.S.C. § 2241 is an extraditee's sole remedy from a magistrate judge's order certifying extraditability. *In re Extradition of Kraiselburd,* 786 F.2d 1395, 1396 (9th Cir.1986) (Kennedy, J.) (*citing Caplan v. Vokes,* 649 F.2d 1336, 1340 (9th Cir.1981) (*citing Collins v. Miller,* 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920))); *see also Hill v. United States,* 737 F.2d 950 (11th Cir.1984); *Ahmad v. Wigen,* 910 F.2d 1063 (2d Cir.1990). That is true, as well, of bail determinations by a magistrate.

In *Wright* itself, for example, which is the seminal case on bail in international extradition matters, the Court "reviewed a decision of a Circuit Court which had reviewed, by habeas petition, prior to an extradition hearing, a decision by a Magistrate to issue a warrant and to deny bail." *Russell,* 647 F.Supp. at 1046 (*citing Wright,* 190 U.S. at 57, 23 S.Ct. at 784). In light of *Wright*'s procedural history, it would seem that "bail determinations made by a Magistrate prior to an extradition hearing are, by inference, reviewable by habeas petition." *Russell,* 647 F.Supp. at 1046–47; *see also Koskotas v. Roche,* 740 F.Supp. 904, 918 (D.Mass.1990) (habeas is the proper vehicle for review of pre-hearing bail determination by magistrate).

■ The magistrate's ultimate decision in an extradition case (i.e., to certify extraditability or not) is itself subject to only limited review on habeas corpus. *Yin–Choy v. Robinson,* 858 F.2d 1400, 1402 (9th Cir.1988). We think that a collateral decision by the magistrate concerning bail in such a case is also subject to only limited review on habeas,[1] and we therefore agree with the *Russell* court's statement that the "scope of habeas review" for bond determinations is " 'very narrow.' " "[T]he Court will only inquire," among other things, "whether there were reasonable grounds for the Magistrate's findings ordering no bail. . . ." *Id.* at 1047.[2]

■ Though Siegmund has filed what he terms an "Appeal of Magistrate's Detention Order (Pursuant to 18 U.S.C. 3145(b))," Doc. # 1, we can, and do, deem the document a habeas petition and proceed to the merits. *See Argro v. United States,* 505 F.2d 1374, 1378 (2d Cir.1974) (where parolee challenged revocation proceeding and sought admission to bail, petition treated as habeas petition); *compare Russell,* 647 F.Supp. at 1047 n. 2 (deportation cases a "useful analogy" for extradition cases) *and Caporali v. Whelan,* 582 F.Supp. 217, 219 (D.Mass.1984) ("complaint" seeking review of INS decision to detain deportee without bail construed as a petition for habeas corpus); *see generally Tucker v. Carlson,* 925 F.2d 330, 332 (9th Cir.1991) (to the extent plaintiff challenges fact of confinement, complaint should be construed as a petition for habeas corpus).[3]

## II. *The Merits*

■ Construing Siegmund's appeal as a habeas petition, we turn to the merits of the magistrate's decision to deny bail. There is "a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno,* 878 F.2d at 317 (*citing Wright,* 190 U.S. at 63, 23 S.Ct. at 787; *Hu Yau–Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.1981)). "Special circumstances" include, for example, "the raising of substantial claims upon which the appellant has a high

1. We note, also, though it is not necessary to our decision, that while deportation and extradition cases are different in important respects, *see, e.g., McMullen v. INS,* 788 F.2d 591, 596 (9th Cir. 1986), at least two courts have suggested that deportation cases provide a "useful analogy" for extradition cases. *Russell,* 647 F.Supp. at 1047 n. 2 (*citing Wacker v. Bisson,* 348 F.2d 602, 606 n. 7 (5th Cir.1965) (Wisdom, J.)). And in deportation cases, "bond determinations [by the INS] pending the resolution of deportation proceedings" are not reviewed de novo by the district courts on habeas. Instead, the district courts decide only whether "any basis in fact" supports the INS's determination. *Makarian v. Turnage,* 624 F.Supp. 181, 184 (S.D.Cal.1985). This at least suggests that a similar standard of review should apply to bond determinations by a magistrate in extradition proceedings.

2. On appeal in *Russell,* the Fifth Circuit noted that such limited "reasonable grounds" review is the standard applied to a magistrate's decision

on extraditability itself, not to a decision on pre-hearing provisional detention, but expressly approved the district court's use of that standard to review the magistrate's bail decision. *In re Extradition of Russell,* 805 F.2d 1215, 1216–17 (5th Cir.1986).

3. Anticipating that his appeal would be deemed a habeas petition, Siegmund suggests, Doc. # 12 at 5, that Local Rules 500–6 (habeas petitions may be referred to magistrates but finally disposed of only by a district judge) and 510–2 (district judge must make de novo review of, among other things, habeas petitions) require that this court review his habeas petition de novo. That is not correct. Those local rules would apply if the habeas petition at issue here had been referred by the district court to the magistrate for a report and recommendation, which is reviewed de novo. In this case, by contrast, the magistrate makes the bail decision; in reviewing it, we act in an appellate capacity and therefore apply only the limited review appropriate on appeal.

probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeals process." *Id.* The fact that the extraditee is not a flight risk is *not* a special circumstance entitling him to bail. *Id.* (*citing Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir.1984)).

■ Siegmund argues that the magistrate misread *In re Extradition of Nacif–Borge,* 829 F.Supp. 1210 (D.Nev.1993). He thus alleges a legal error, and we review purely legal questions de novo. *Nacif,* according to Siegmund, stands for the proposition that the "availability" of bail in the requesting country (in this case Austria) is a special circumstance justifying bail in the United States. Doc. # 1 at 5–6; Doc. # 12 at 4, 6–7. And, he claims, bail would be available to him in Austria on these charges. According to the government, however, the mere "availability" of bail, in the sense that the offense is generally a bailable one, is not enough. In the government's view, *Nacif* stands for the proposition that a special circumstance exists only if the extraditee in fact *would* be admitted to bail in the requesting country. We need not resolve that question, because, while *Nacif* is a scholarly exploration of the law of bail in extradition cases,[4] we respectfully disagree with its holding that the availability of bail on the underlying offense in the requesting country may constitute a "special circumstance" justifying bail in the United States pending resolution of the extradition case. *Nacif,* 829 F.Supp. at 1221.[5]

We elect to follow the reasoning of the court in *In re Extradition of Rouvier,* 839

F.Supp. 537 (N.D.Ill.1993), rather than that of *Nacif,* for several reasons. First, *Nacif* cites as its authority on this point *In re Gannon,* 27 F.2d 362 (E.D.Pa.1928), in which the extraditee was charged in Canada with "obtaining money by false pretenses." The court admitted Gannon to bail on the basis of a melange of factors, noting that (1) the offense itself was bailable in both Pennsylvania and Canada, (2) there was a risk that he would jump bail, but "likewise" a risk that he would escape from jail if not admitted to bail, and (3) lengthy delay was likely, as witnesses would have to come from some distance away. *Id.* at 362–63. *Gannon*'s reasoning is not convincing: contrary to its suggestion, detention is, in fact, "a far more certain method of insuring the presence of the defendant than bail." *Rouvier,* 839 F.Supp. at 540. Moreover, the *Nacif* court relied on the first factor mentioned in *Gannon* (the bailable nature of the offense in the requesting country) but it is not clear that this, standing alone, would have justified bail in *Gannon* itself.

Second, as pointed out by the *Rouvier* court, adoption of what it termed the "*Gannon* rule," under which an extraditee can be admitted to bail in the United States if the underlying offense is bailable in the requesting country, would "force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense." *Rouvier,* 839 F.Supp. at 541. That would be an undesirable practice: it might well be unworkable, and, if applied widely, it could eviscerate, at least with respect to re-

---

**4.** The court began by noting that "reasoning in extradition cases parallels traditional bail evaluations with some obvious adjustments for the international ramifications of the bail decision," *Nacif,* 829 F.Supp. at 1214, and that "[t]he primary concern in an international extradition matter is to deliver the extraditee to the requesting nation." *Id.* at 1213. Next, the court listed what it considered to be five universally accepted propositions applicable to extradition cases:

　　—a presumption against bail exists in international extradition cases;
　　—only special circumstances will justify bail;
　　—the person seeking bail has the burden of establishing an entitlement to bail;
　　—an elevated standard of proof must be satisfied; and

　　—the person seeking bail cannot be a risk of flight or a danger to the community.

*Id.* at 1214. Finally, in addition to the "high probability of success on the merits," "serious deterioration of health," and "unusual delay in the appeals process" criteria set out in *Salerno,* the *Nacif* court suggested that "special circumstances" might exist if the extradition process itself will be unusually long and complex. *Id.* at 1220.

**5.** In *Nacif* itself, for example, the extraditee, a Mexican national arrested in Las Vegas, was charged with tax offenses in Mexico. The "special circumstance" justifying bail in that case was the fact, as found by the district court, that Nacif would have been admitted to bail had he been arrested in Mexico. *Id.*

questing countries whose domestic practice, like our own, strongly favors bail, the doctrine set out by the Supreme Court that bail is the exception, not the rule, in international extradition cases.

■ Finally, we note that an extradition treaty between sovereign nations is essentially a contract, and the concern in an international extradition case is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country if the conditions precedent to extradition, as set out in the treaty, are satisfied. To say that the extraditee would have been granted bail in the requesting country had he been arrested there, or that he will be granted bail once returned there, thus misses the point.[6]

■ Siegmund also argues that the nature of the offense charged in Austria (a "fraudulent bankruptcy" in which he is charged as an "aider and abettor") ought to be taken into account, as should the fact that he can, under the treaty, be held for up to ninety days pending extradition, which he claims will undermine his due process and speedy trial rights. Doc. # 1 at 7–8. We agree with the *Nacif* court's rejection of the argument that the nature of the underlying offense could constitute a "special circumstance" justifying bail (although it is certainly a factor in evaluating the risk of flight). *Nacif*, 829 F.Supp. at 1219–20 (noting that about one-third of all extradition cases in the United States involve charges of financial fraud). Further, "speedy trial" rights are irrelevant here, and a ninety-day wait while extradition proceedings are in the works would not even come close to violating Siegmund's due process rights.

Finally, Siegmund argues that the magistrate erred in deeming him a flight risk. Doc. # 1 at 10–12. We need not decide whether that is so. As the Ninth Circuit has stated quite clearly, the fact that an extraditee is not a flight risk is not a "special circumstance" justifying bail, *Salerno*, 878 F.2d at 317, and no other "special circum-

stance" has been presented. Because Siegmund's case presents no such circumstance, he could not be admitted to bail even if he presented no risk of flight at all.

**IT IS THEREFORE HEREBY ORDERED** that, for the reasons stated above, Siegmund's appeal, construed as a **petition for habeas corpus (Doc. # 1), is DENIED.**

---

**6.** This reasoning, we note, cuts both ways. Consider the hypothetical case of an extraditee whose case presents "special circumstances" and who is therefore admitted to bail pending extradition, despite the fact that the requesting country clearly would not admit him to bail under its own laws.