898 F.Supp. 691 (1995)
In the Matter of the EXTRADITION OF Gregory J. SUTTON.
No. 95-0080 M.
United States District Court, E.D. Missouri, Eastern Division.
September 14, 1995.
*692 David Rosen, St. Louis, MO, for plaintiff.
Arthur Margulis, St. Louis, MO, for defendant.

MEMORANDUM AND ORDER
NOCE, United States Magistrate Judge.
This matter is before the Court upon the motion of Gregory J. Sutton for bail and the government's opposition to bail. A hearing was held on August 17, 1995.
On August 14, 1995, the United States, acting on behalf of the government of Australia, filed a Complaint for Provisional Arrest With a View Towards Extradition and a Complaint, pursuant to 18 U.S.C. § 3184, seeking a warrant for the arrest of Gregory J. Sutton. The complaints allege that, pursuant to a treaty between the United States and Australia, the government of Australia has formally requested the extradition of *693 Sutton. The complaint alleges that Sutton has been charged in Australia with twenty-four counts of sexual offenses against persons under sixteen years of age, in violation of the Crimes Act of Australia, committed within the jurisdiction of Australia between 1985 and 1987.
The complaints allege that warrants for Sutton's arrest were issued on September 16, 1992, and January 28, 1993, by a Justice of the Peace, in the Lismore Local Court, at New South Wales, Australia.
On August 15, 1995, defendant Sutton was arrested in this district without incident and appeared before the undersigned United States Magistrate Judge for an initial appearance. On August 17, 1995, a hearing was held on the issue of detention.
At the detention hearing, the undersigned set a hearing for August 28, 1995, on the issue of whether Sutton should be extradited. On August 22, 1995, the government moved for a continuance of the extradition hearing. On August 24, 1995, without objection from Sutton, the undersigned reset the hearing to September 18, 1995. The purpose for the continuance, according to the United States, is for further investigation and the consideration of additional charges against Sutton in Australia. The government of Australia has since advised the United States that additional charges are being brought against Sutton. See Letter from Malcolm Bennett, Senior Government Lawyer, International Branch (attached to Government's Answer to Respondent's Motion for Bail, filed September 1, 1995.)
On September 12, 1995, the extradition hearing was continued to September 21, 1995, at the request of the defendant.
From the record of these proceedings, including the documents submitted to the court and the pretrial services report, the undersigned makes the following findings of fact:

FACTS
1. Gregory J. Sutton was born in Wyong, New South Wales, Australia, where his parents and brother reside. Sutton is 44 years old.
2. At the time of the offenses alleged against him, Sutton had become a teaching Brother in a Catholic religious Order. In July 1987, at the request of the Order, Sutton participated in a mental health assessment.
3. Sutton left Australia on August 18, 1989, and entered the United States traveling on an Australia passport. He lived in Canada, from November 1989 to June 1990, while he received inpatient treatment for sexual addictions. Upon his discharge from this treatment, he was placed in an aftercare program. Sutton lived in the Chicago area from July 1990 to May 1992. While in Chicago, he received counseling from a private psychiatrist and a spiritual director. He received a master's degree in 1992.
4. Thereafter, in 1992, Sutton moved to St. Louis, Missouri. On October 3, 1992, he married a resident of St. Louis County, whom he had known for five and one-half years. Sutton is a permanent resident alien of the United States. He and his wife have no children. Sutton has been employed in the St. Louis area since April 1993. Defendant and his wife reside in St. Louis County, in a home in which they have substantial equity.
5. Sutton was arrested without incident at his home on August 15, 1995. He has no prior arrests, convictions or any pending cases or outstanding warrants.

DISCUSSION
The United States, on behalf of the government of Australia, seeks the detention of Sutton, pending the extradition hearing and thereafter, if the Court concludes that Sutton is extraditable. Sutton has moved for bail, and provided affidavits in support of his motion.
The federal statute that governs the extradition of an individual from the United States to a foreign country, 18 U.S.C. § 3184, does not provide for bail.[1] The United *694 States Bail Reform Act, 18 U.S.C. § 3141, et seq., does not apply to international extradition cases; it only applies to persons accused of committing offenses against the United States. See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2); United States v. Hills, 765 F.Supp. 381, 384 n. 5 (E.D.Mich.1991). Therefore, the Court must look to federal common law regarding extradition proceedings.
There is a strong presumption against bail in international extradition proceedings. Salerno v. United States, 878 F.2d 317, 317 (9th Cir.1989); United States v. Leitner, 784 F.2d 159, 160 (2d Cir.1986) (per curiam). The reason for this presumption was stated by the United States Supreme Court in Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903):
The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.
Id. at 62. In Wright, the Supreme Court stated that it was unwilling to hold that federal courts do not have the authority to release extraditees on bail other than as specifically authorized by statute, but stated that "bail should not ordinarily be granted in cases of foreign extradition...." Id. at 63.
Federal courts have held that release on bail should not be granted except under special circumstances. See, e.g., Wright, 190 U.S. at 63, 23 S.Ct. at 787; Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir.1991); Salerno, 878 F.2d at 317; In re Extradition of Russell, 805 F.2d 1215, 1216-17 (5th Cir. 1986); United States v. Leitner, 784 F.2d at 160; Hu Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir.), cert. denied, 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981); United States v. Williams, 611 F.2d 914, 914 (1st Cir.1979) (per curiam).
Courts have taken a limited view of what constitutes "special circumstances." Special circumstances have been found in cases: (1) where the fugitive would lose his entire fortune, if not permitted to finish his participation as plaintiff in a civil proceeding which was underway at the time of his arrest, In re Mitchell, 171 F. 289, 289-90 (S.D.N.Y.1909); (2) where there is no appropriate facility in which to house a juvenile fugitive, Hu Yau-Leung v. Soscia, 649 F.2d at 920 (age, background and lack of suitable facility to hold him); (3) where the substantial claims of the fugitive have a high probability of success, Salerno, 878 F.2d at 317; (4) where the fugitive suffered a serious deterioration of health while incarcerated, id.; and (5) where there was an unusual delay in the appeals process, id.
Sutton argues that there are two special circumstances present in his case: (1) the offense is bailable in both the requesting country (Australia) and the requested country (United States); and (2) the additional time sought by the government to perfect its charges and evidence means the extradition hearing will not be conducted promptly.
In support of his first special circumstance, Sutton provides an "Outline of Written Submissions as to Issue of Bail," from Greg Walsh & Co., Solicitors, Chester Hill, New South Wales. The outline states that there would be a presumption in favor of bail in connection with the charges against Sutton in New South Wales. The outline also states that Mr. Walsh, who "has appeared in a number of these types of cases over an extensive period of time since his admission to Practice in New South Wales in 1986," believes that Sutton "very likely ... would be granted Bail pending the Hearing of a Committal Hearing in New South Wales." (Exhibit A, attached to Motion for Bail.) Sutton also argues that under the Missouri Constitution, bail is permitted for the type of offense with which he is charged.
Sutton relies on In re Extradition of Nacif-Borge, 829 F.Supp. 1210 (D.Nev.1993), in *695 which the court held that the fugitive had shown by "clear and convincing evidence" that bail would be available in Mexico on the underlying substantive offense and that this constituted a special circumstance. Nacif-Borge, 829 F.Supp. at 1221. The court based its decision on In re Gannon, 27 F.2d 362 (E.D.Pa.1928), in which the court granted bail based on the availability of bail for the underlying substantive office in both the requested country and the requesting country. Id. at 362.
At least two courts have rejected bail availability as a special circumstance justifying bail. In In re Extradition of Siegmund, 887 F.Supp. 1383 (D.Nev.1995), and In re Extradition of Rouvier, 839 F.Supp. 537 (N.D.Ill. 1993), the courts noted Nacif-Borge's reliance on Gannon, with which both courts disagreed. The two courts found that the Gannon court was particularly concerned about the fact that the detainee would have to wait a considerable amount of time for his extradition hearing because the key witness had a long distance to travel. Siegmund, 887 F.Supp. at 1386; Rouvier, 839 F.Supp. at 540. Such has not been shown to be a factor in this case.
In addition, both courts agreed that the Gannon court's holding conflicted with current federal case law, that bail is the exception rather than the rule in international extradition cases. Siegmund, 887 F.Supp. at 1387; Rouvier, 839 F.Supp. at 540-41. The Rouvier court also found that the Gannon ruling would "force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense." Rouvier, 839 F.Supp. at 541. The Siegmund court cited this language and found this would be an undesirable and unworkable practice. Siegmund, 887 F.Supp. at 1386. The undersigned agrees. The purpose of an international extradition proceeding "is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country" if the conditions for extradition are met. Siegmund, 887 F.Supp. at 1387. The paramount issue before this court is whether to release the defendant until the conclusion of the extradition proceedings.
In support of his second argument, that delays in an extradition hearing may constitute a special circumstance, Sutton relies on United States v. Taitz, 130 F.R.D. 442 (S.D.Calif.1990). In Taitz, the fugitive was facing 434 counts of fraud. The court noted the complexity of the case, including whether the offense at issue was an extraditable offense under the treaty between the two countries. Because of the likelihood that resolution of that issue would mean numerous appeals lasting as long as two years, during which the fugitive would be incarcerated, the court found a special circumstance existed. Taitz, 130 F.R.D. at 445-46.
At this time in the extradition proceedings at bar, there is no reason, other than a constitutional challenge to the extradition statute, for the resolution of these proceedings to be delayed for any unduly long period of time. The court believes, however, that a protracted challenge to the constitutionality of the United States extradition statute could be a special circumstance which the court should consider in determining whether to release the defendant on bail. Such a challenge would go to the heart of the authority of the court even to consider the propriety of the extradition request; it is factually unrelated to any risk of flight by the defendant. However, at this time the court cannot say that any undue and protracted delay in the extradition proceedings will occur. If undue delay materializes, the court will reconsider the matter.
Sutton also argues that he is not a flight risk, based on his ties to the community and his character. He shows that he is married to a St. Louis resident; his wife has family who live in the area; both Suttons have friends who live in the community; the Suttons have a strong, vital and close marital relationship; they own real estate in St. Louis; and Sutton has a reputation for honesty and integrity. (Affidavits B-F, attached to Motion for Bail.) Sutton states that the court can monitor his whereabouts through the use of electronic tethering or frequent reporting requirements and that he is willing to deposit his passport with the clerk of the *696 court. He asks the Court to set a reasonable bond.
Courts have occasionally found a person's character and background to be a special circumstance. Hu Yau-Leung v. Soscia, 649 F.2d at 920 (finding special circumstances were the fugitive's age (16 years), background and lack of suitable facility in which he could be held); United States v. Taitz, 130 F.R.D. 442, 446 (S.D.Cal.1990) (finding special circumstances included the fugitive's lack of prior record, no allegation of danger to the community on the basis of violence, and no continuing criminal conduct).
The undersigned believes that an extradition fugitive's character and background, which give rise to a low risk of flight, are not by themselves a special circumstance sufficient to require release on bail in an international extradition case. Salerno, 878 F.2d at 318; Russell, 805 F.2d at 1217; Leitner, 784 F.2d at 161; Williams, 611 F.2d at 915; Siegmund, 887 F.Supp. at 1385; Hills, 765 F.Supp. at 386. The court will reconsider these factors, and all attendant circumstances, however, if these proceedings become temporarily protracted.
For these reasons,
IT IS HEREBY ORDERED that the motion of Gregory J. Sutton for release on bail is denied without prejudice.
NOTES
[1] The undersigned notes that a United States District Judge has found this statute to be unconstitutional, because it permits the Executive Branch (the Secretary of State) to review the decisions of federal extradition judges. Lobue v. Christopher, 893 F.Supp. 65 (D.D.C.1995).