UNITED STATES of America, Plaintiff,

v.

Allen David TAITZ, Defendant.

Crim. No. 90–1251m.

United States District Court,
S.D. California.

April 20, 1990.

William Braniff, U.S. Atty., Joseph P. Brannigan, Asst. U.S. Atty., San Diego, Cal., for plaintiff.

Charles Goldberg, Patrick Q. Hall, Goldberg, Frant & Hall, San Diego, Cal., for defendant.

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE BAIL

BARRY TED MOSKOWITZ, United States Magistrate:

On March 15, 1990, the United States Attorney filed a complaint under 18 U.S.C. § 3184, seeking a warrant for the arrest of Allen David Taitz for extradition to the Republic of South Africa. A warrant of arrest was issued on March 15, 1990. Taitz was arrested later that day and arraigned. He was held without bail until further proceedings. At a status conference held on March 22, 1990, the court set a bail hearing for April 11, 1990 at the request of counsel for Taitz. On April 11, 1990, the court held a hearing to determine whether conditions of pretrial release should be set. The United States argued that Taitz should be held without bail, contending that under *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), bail is allowed for potential extraditees only in special circumstances. The government argued that no special circumstances exist. Taitz contends that several "special circumstances" exist and that there is no risk of flight. The question before the court is whether the factual circumstances in this case constitute "special circumstances" entitling Taitz to bail.

### A.

Taitz, a citizen of South Africa, was engaged in the purchase and sale of diamonds. In September 1985, he immigrated to the United States and received legal permanent resident status. On December 11, 1985, a warrant for his arrest was issued by a magistrate in Johannesburg for 434 counts of fraud in relation to the reporting of or failure to report diamond transactions.

The charges contained in the exhibits lodged with the court by the United States reveal that Taitz is charged with two fraudulent schemes. First, in counts 1–428, it is charged that Taitz created a scheme to defraud South Africa of customs duties and excise taxes by falsely alleging that he had sold diamonds to his business entity Nova Gems in the Kingdom of Swaziland or by failing to disclose that he had not sold the diamonds to Nova Gems. Diamond sales from a South African dealer to a Swaziland dealer are not subject to excise taxes or customs duties. Second, Counts 429–434 charge Taitz with making false statements that he removed diamonds from one special customs and excise warehouse to another. Taitz is charged with failing to declare the removal of the diamonds from the special warehouse, an event that requires payment of customs duties. The offenses are charged as fraud resulting in the loss of excise taxes and customs duties. On December 13, 1989, South Africa requested the United States to extradite Taitz.

In August 1985, Taitz moved to Sacramento, California where he lived with his brother-in-law. He received permission from the INS to work in December 1985. He presently has legal permanent resident status and intends to apply for U.S. Citizenship.

In early 1986, Taitz was contacted by a South African police officer who indicated that he wanted to question him. Taitz agreed to meet with the officer in the United States but no further contact was made. There is no evidence that the officer notified Taitz of the pending charges or sought his arrest at that time.

Taitz moved to Las Vegas, Nevada where his mother and two brothers resided. He took a job in a rare gems store operated by his brothers. His wife sold all of their property in South Africa and in July 1986, she and Taitz' two young sons moved to Las Vegas. Thereafter, Taitz and his family moved to San Diego, California where his sister-in-law resided. He rented a townhouse in Encinitas and enrolled the children in school. He opened a jewelry concession in two ANA discount stores. In May of 1988, he purchased a house in Encinitas. Soon thereafter, his wife became ill suffering from a gall bladder disorder and a stroke. His wife decided to return to

South Africa with Taitz' sons and live with her parents who could care for her. Taitz sold the house and remained in the United States. Taitz' wife decided to remain in South Africa. In December 1989, Taitz and his wife were divorced. Taitz sends approximately $1,000 a month to his wife for child support. His children visited him for a month in July 1989.

Taitz has lived openly in the United States obtaining property, and securing business and vehicle licenses in his true name. He presently resides with Robert Feher at 5230 Rincon Street in San Diego. He is engaged to marry Adrian Jaroslawicz of Santa Clara, California who is relocating to San Diego. Taitz is a man of nominal means. He lost his concessions at the ANA stores and presently operates a jewelry business at 635 C Street in San Diego. There is no evidence of any substantial financial assets held by Taitz. The government implied that Taitz may have money from the alleged fraud hidden away. No evidence exists to allow such an inference. Further, the fraud involved failing to pay taxes not the fraudulent obtaining of funds. Taitz does have the support of family and friends, all of whom packed the courtroom during the bail hearing.

### B.

Persons awaiting trial in federal court for offenses against United States law are normally accorded bail. Except in certain carefully limited exceptions, pretrial liberty is the norm. *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987). The procedure under the Bail Reform Act of 1984, 18 U.S.C. § 3142, is to release a defendant awaiting trial on only those conditions reasonably necessary to assure his presence at trial and to safeguard the community and any particular person. Only if there are no such conditions available, can the court order pretrial detention. The provisions for release on bail for federal defendants apply only to persons charged with federal offenses. 18 U.S.C. §§ 3041, 3141–42, Fed.R.Crim.P. 54(b)(5); *Kamrin v. United States*, 725 F.2d 1225 (9th Cir.1984). Neither the extradition statutes nor the treaty at issue in this case contain provisions providing for or proscribing release on bail pending the extradition hearing.

Eighty-seven years ago in *Wright v. Henkel*, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the Supreme Court held that while bail should not ordinarily be granted in extradition cases, release was not foreclosed where special circumstances exist. 190 U.S. at 63. The courts that have interpreted *Wright v. Henkel*, generally agree that there is a presumption against bail in an extradition case and that the defendant facing the extradition hearing has the burden of establishing special circumstances in order for a court to order pre-hearing conditional release. *Salerno v. United States*, 878 F.2d 317 (9th Cir.1989); *United States v. Leitner*, 784 F.2d 159 (2d Cir.1986). The rationale for distinguishing pretrial release in extradition cases from federal criminal cases is that extradition cases involve an overriding national interest in complying with treaty obligations. If the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives. *See generally*, Hall, *A Recommended Approach to Bail in International Extradition Cases*, 86 Mich.L.Rev. 599 (1987); Whiteman, 6 *Digest of International Law*, 1033–1044 (1968).

While all the courts agree that special circumstances must exist for the release of a person facing extradition, there is disagreement as to whether absence of risk of flight is a primary special circumstance. See, Hall, *supra*, 86 Mich.L.Rev. 610–612. The Ninth Circuit in *Salerno, supra*, made it clear in this circuit that absence of flight risk is not the criteria for release. Rather, special circumstances must exist in addition to absence of risk of flight. The Court in *Salerno* listed some such circumstances as the raising of substantial claims upon which there is a high probability of success, a serious deterioration in health while in custody, and unusual delay in the appeal

process. 878 F.2d at 317. Magistrate Gonzalez found deprivation of religious practice while incarcerated to be a special circumstance in *In Re The Matter Of Extradition of Alfie–Cassab and Cassab–Hanono,* No. 89–2493M, (S.D.CA. July 5, 1989), *affirmed as modified,* July 7, 1989 (Judge Brewster). In *United States v. Kamrin,* No. 82–251M–01, (W.D.WA. Dec. 10, 1982), the district court reversed the magistrate's order denying bail finding no risk of flight and that the factual issues involved in the extradition were of extreme complexity and involved issues of first impression. Under *Salerno, supra,* the analysis to determine whether one facing an extradition hearing should be released first ascertains whether there is a risk of flight. If no such risk exists, the court then determines whether any "special circumstances" exist.

### C.

**■** *Risk of Flight*—The court finds that there is no risk that Taitz will flee if appropriate bail conditions are met. Taitz has substantial family ties to the Southern California–Las Vegas, Nevada area. He set up his business here and has made a substantial time commitment towards his success. He has overwhelming support from family and friends. The court has reviewed 34 letters from family and friends supporting Taitz. He has lived openly and did not hide from authorities. He lived so openly that he was arrested within hours of the issuance of the warrant.

Taitz seeks to become a U.S. citizen. Failure to appear would affect his immigration status. Furthermore, he has no place to go other than to South Africa. There are substantial limitations on the ability of a South African citizen to obtain a visa or to immigrate. Taitz is not a man of means. He has no assets to fund flight and sustain him while at large.

Finally, Taitz is very close to his family. Taitz would not flee and jeopardize his family's hard earned financial assets. Thus, a substantial bond secured by Taitz' family's financial assets would clearly result in his appearance.

*Special Circumstances*—Having found no risk of flight, the court must examine the record to determine whether special circumstances exist. An analysis of the record and legal precedent reveals that the following special circumstances exist.

1. This case involves 434 counts of fraud. While the government contends it is a simple matter, the court must carefully consider the evidence to determine whether probable cause exists for each of the 434 counts. Taitz could only be tried on those counts for which the court finds him extraditable. *Theron v. United States Marshal,* 832 F.2d 492, 496 (9th Cir.1987); Treaty between the United States of America and the Union of South Africa, Article 7, 2 U.S.T. 884, T.I.A.S. No. 2243 (1947). The government has submitted to the court a carton containing the exhibits it intends to use at the extradition hearing. These exhibits need to be analyzed by the parties and the court before arguments can be made and a decision rendered.

Further complicating the question of extraditability is the issue of whether the offense charged constitutes "fraud" as defined in Article 3, paragraph 22 of the treaty. This section provides that

Extradition shall be reciprocally granted for the following crimes or offenses:
22. Fraud by a bailee, banker, agent factor, trustee, director, member or officer of any company, or the obtaining of money, valuable security or other property by false pretenses.

The gist of the offenses charged involve either failure to report or the false reporting of diamond transactions and the consequent underpayment of excise taxes and custom duties. Tax fraud or evasion is not an enumerated extraditable offense. A substantial question exists as to whether failure to declare or false declaration in regard to taxes is an extraditable offense under the treaty. Neither side has cited any case authority on this issue. Counsel for Taitz has pointed out that there are two other extradition cases in this district that involve this issue. More than six months has past in each without the extradition hearing being held due to the complexity of

the cases. The resolution of this issue will no doubt involve habeas corpus proceedings in the district court and the Court of Appeals. If this court were to decide the extradition request today, the various district and circuit court proceedings would likely last for as long as two years. Taitz would have to be incarcerated during this lengthy period.

2. Taitz has no prior record and is not charged with a crime of violence. There is no allegation that he is a danger to any community on the basis of violence or continuing criminal conduct.

3. Taitz has suffered some health difficulties in the form of allergic reactions to corn and corn sweeteners. These are reported to be common substances in food at the Metropolitan Correctional Center. This has resulted in stomach ailments. Taitz also experiences an allergic reaction to the soap used to launder the inmate clothes at M.C.C. This has resulted in numerous rashes. The court notes that Taitz was scratching himself numerous times during the bail hearing.

4. Taitz is an orthodox Jew. He is unable to carry out the rituals of his religion due to lack of materials and facilities at the M.C.C. Magistrate Gonzalez in an opinion affirmed by Judge Brewster, held that identical circumstances constituted special circumstances meriting prehearing release. *In the Matter of the Extradition of Jose Alfie–Cassab and Alfonso Cassab–Hanono, supra.* While, the court does not feel that this special circumstance alone merits release, it must be considered in light of all of the other circumstances.

5. The diplomatic necessity for denying bail does not exist in this case. As noted above, the rationale for denying bail is that the United States will suffer consequences in foreign affairs if one subject to extradition absconds while on release.[1] The State Department has recognized that in general, the practice of the district courts is to release persons provisionally arrested and facing extradition on bail in the absence of risk of flight. *United States v. Messina,* 566 F.Supp. 740, 742 (E.D.N.Y.1983). The law of South Africa permits a magistrate to admit to bail a person facing an extradition hearing.[2] In *Ex Parte Graham: In Re United States Of America v. Graham,* 1987 (1) S.A. 368 (Sup.Ct. Transvaal Div. 1986), the Court noted that under Section 9(2) of the South African Extradition Act of 1962, a magistrate has the power to admit to bail a person detained for the purpose of an extradition hearing if the offense were bailable under South African law. However, once the extradition hearing is concluded, the magistrate no longer has the power to admit an extraditee to bail. Such an order can be issued only by the Supreme Court of the applicable provincial division.

The Court in *Ex Parte Graham* noted that the magistrate's power to admit to bail pending extradition hearings existed in Section 9 of the Extradition Act of 1870, the antecedent to the present law. In analyzing the issue of bail for persons found to be extraditable after a hearing the Court stated:

Does all this mean that a person in the shoes of the applicant has no right to apply for bail? If that were so, grave injustice could result especially where there are delays caused by appeals or administratively. It would also have the strange result that, had the applicant been charged in the Republic of South Africa, he would have received bail and, as far as I know, once he reaches the United States, he is entitled to bail. Furthermore, the potential sentence can be smaller than the time spent in prison awaiting extradition.

**1.** Absence of risk of flight would alleviate the concern. *See* Hall, *supra,* 86 Mich.L.Rev. at 612–16.

**2.** Counsel for Taitz argued that the law of South Africa permitted bail in extradition cases. The court gave notice to the parties that evidence should be submitted on this issue. The government declined to make a submission. Taitz submitted a fax copy of a declaration of Charles B. Shapiro, an attorney in Johannesburg, South Africa, which relies on *Ex Parte Graham: In Re U.S.A. v. Graham,* 1987 (1) S.A. 368 (Sup.Ct., Transvaal Div.1986). The court may consider this declaration in determining foreign law. Fed.R.Crim.P. 26.1.

1987 (1) S.A. at 372. The Court in *Ex Parte Graham* further relied upon the opinion of Chief Justice, Lord Russell of Killowen, in *R. v. Spilsbury*, [1898] 2 Q.B. 615, which held that the English courts had the power to grant bail to persons who had been found to be extraditable but were awaiting actual return to the requesting country.

Under South African law, fraud is a bailable offense. Declaration of Shapiro at 2–3. The analysis under South African law for determining whether to release a defendant on bail involves several of the same factors that this court relies upon under the Bail Reform Act of 1984. A principal difference is that the defendant has the burden of proving that he should be released.

Counsel for Taitz brought to the court's attention a newspaper article of March 24, 1990 in the Johannesburg *Citizen* revealing that a court in Johannesburg released on bail a defendant who was facing extradition to the District of Connecticut on charges of conspiracy to illegally import endangered wildlife and machine guns, smuggling, and making false statements to a U.S. government agency. The false statements charge is not unlike the charge in the present case. See Exhibit 5 to Taitz' motion for bail. Certainly, there can be no diplomatic concern by South Africa if a United States court releases on bail a person who is facing extradition to South Africa where bail is available in South Africa for persons facing extradition to the United States.

### D.

The court is acutely aware of the importance of securing persons facing extradition to foreign states. While there is a presumption against bail, the law, however, does not preclude a court from setting bail if there is no risk of flight and special circumstances exist. The court holds that there is no risk of flight and there are special circumstances meriting release. Therefore, the court will order Taitz' release on bail. The conditions of release shall include a personal surety bond in the amount of $500,000 secured by property belonging to his family and friends and cosigned by all the adult members of Taitz' family residing in California and Nevada.

IT IS SO ORDERED.