**In the Matter of the EXTRADITION OF Emilio Valdez MAINERO.**

**Magistrate No. 96–1798–M.**

United States District Court, S.D. California.

Oct. 21, 1996.

Michael Pancer, Law Office of Michael Pancer, San Diego, CA, for Emilio Valdez Mainero.

## MEMORANDUM DECISION DENYING BAIL PENDING EXTRADITION PROCEEDINGS

BATTAGLIA, District Judge.

### I

*Background*

On September 30, 1996, the United States Attorney's Office for the Southern District of

California, acting on behalf of the Republic of Mexico, presented to the Honorable Anthony Battaglia, United States Magistrate Judge, a complaint and a formal extradition request for Emilio Valdez Mainero (hereinafter "Valdez" or "Extraditee"). The complaint requested that Magistrate Judge Battaglia issue a provisional warrant for the arrest of Valdez with a view to Valdez' extradition to the Republic of Mexico. The United States Attorney's Office presented the complaint against Valdez pursuant to the extradition treaty between Mexico and the United States (the "Treaty"). In the complaint, it was alleged that Valdez was charged with the crime of carrying a firearm exclusively reserved for the use of the armed forces in violation of Articles 160 and 162, paragraph III, of the Criminal Code for the Federal District.

On October 1, 1996, Valdez was arraigned on the complaint. The matter was set for a bail hearing on October 9, 1996. Prior to the hearing, Mr. Valdez filed a written motion in support of bail and the U.S. Attorney's Office has filed an opposition. The hearing proceeded before Magistrate Judge Battaglia on October 9, 1996, as scheduled, and the issues were submitted for decision.

## II

### *Statement of Facts*

The complaint filed on September 30, 1996 sets out the underlying facts supporting the charge of carrying a firearm reserved for the armed forces. The facts provided through diplomatic channels allege that on April 19, 1994, Valdez was stopped by Tijuana City Police officers while he was carrying a .38 caliber firearm with two loaders and 26 usable cartridges of the same caliber. The firearm was manufactured in the United States. The allegations also assert that Valdez was arrested as the passenger of a Chrysler sedan on the provisional arrest warrant. At the time of his arrest, a vehicle search revealed a two way radio, and three cellular phones. The driver of the vehicle was Alfredo Hodoyan–Palacios. Hodoyan is charged in Mexico with the murder of four individuals which forms the basis of a provisional arrest warrant for Hodoyan. In addition, at the residence where Valdez was residing, federal agents executed a search warrant and found an AK–47 assault rifle. Hodoyan later claimed that he had possessed the assault rifle found at Valdez' residence.

At the hearing, the Assistant U.S. Attorney asserted that the provisional arrest would be further supported by charges involving a homicide. In this regard, the government filed the *DECLARATION OF FRANCISCO MOLINA RUIZ IN SUPPORT OF GOVERNMENT'S RESPONSE AND OPPOSITION TO MOTION FOR BAIL.* The Ruiz Declaration describes (at page 1) Mr. Valdez as "a highly dangerous armed person, who belongs to an organized criminal group which is dedicated to drug trafficking and other crimes". The Declaration goes on to allege Mr. Valdez's involvement in criminal conduct in Mexico including homicide and drug trafficking.

Mr. Valdez asserts that he is a lawful permanent resident in the United States having had a green card for 16 years. Mr. Valdez is 33 years old and is employed in the real estate business, collecting rent on family owned properties in Tijuana. He states he has strong ties to San Diego and Tijuana, and is married and has three minor children, ages 6, 4 and 2. Mr. Valdez has no criminal record and submits that special circumstances to justify bail include his highly likely success in opposing extradition due to the lack of dual criminality [1] on the firearms offense alleged in this matter. Mr. Valdez was supported at the hearing by the presence of his wife, mother, mother-in-law, three brothers-in-law, three sisters-in-law and three friends.

1. A "special circumstance" for bail can be established by submitting proof of a "substantial claim upon which Extraditee has a high probability of success". *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989). Dual criminality is an essential element of the governments burden of proof to establish a basis for extradition. *Extradition of Sauvage,* 819 F.Supp. 896 (S.D.Cal.1993). Here, Valdez argues that the firearms offense charged in Mexico is not a crime under the criminal statutes in the United States.

In addition, Mr. Valdez contends that the reason Mexican authorities want to get their hands on him is because they believe he has information about certain drug traffickers in Mexico. Mr. Valdez believes that if he is extradited to Mexico he certainly will be tortured. In fact, when Mr. Valdez was arrested, he states that the DEA agents put him on the telephone with an individual who represented himself to be a general in Mexico. The general threatened him, and said that if Mr. Valdez did not cooperate, he "would be waiting for him."

Mr. Valdez proposes that his mother can mortgage her Tijuana home of 38 years and post $100,000 cash as security for bail. Mr. Valdez also submits that bail would be available to him on the firearms offense in Mexico and that, if convicted, the gun offense would likely result in a two year suspended sentence.

On October 15, 1996 a *SUPPLEMENTAL COMPLAINT FOR PROVISIONAL ARREST WITH A VIEW TOWARD EXTRADITION* was filed. The Supplemental Complaint states, among other things, that on October 9, 1996, Mr. Valdez was charged in Mexico with the crime of criminal conspiracy (Article 164, paragraph 1, and Article 13, section II of the Penal Code for the Federal District) and a warrant was issued for his arrest.

### III

### *Extraditee's Right to Bail*

Title 28 U.S.C. § 636(a)(1) grants to magistrate judges "all powers and duties conferred or imposed upon United States commissioners by law ...". One such power is conferred by 18 U.S.C. § 3184, which authorizes "any magistrate judge authorized to do so by a court of the United States" to conduct proceedings when a foreign government seeks the extradition of a person found within the magistrate's judicial district.

Section 3184 does not mention bail, but the power to make bail determinations is within the magistrate judge's more general power to conduct proceedings in extradition matters. *See, e.g., Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *In*

*re Extradition of Russell,* 647 F.Supp. 1044, 1046 (S.D.Tex.1986); *accord In re Extradition of Rolf Siegmund,* 887 F.Supp. 1383 (D.Nev.1995). Moreover, because an extradition proceeding is not a criminal case, the Bail Reform Act of 1984 does not govern international extradition proceedings. *Kamrin v. United States,* 725 F.2d 1225, 1227–1228 (9th Cir.), *cert. denied,* 469 U.S. 817, 105 S.Ct. 85, 83 L.Ed.2d 32 (1984). *See also, United States v. Hills,* 765 F.Supp. 381, 385 n. 5 (E.D.Mich.1991) ("Several courts have expressly held that ... the provisions of the Bail Reform Act do not apply in extradition actions"). The legal standards governing the detention or release of a fugitive are matters of federal case law.

The Supreme Court and the federal courts of appeals have consistently held that bail should not ordinarily be granted in foreign extradition cases. In *Wright v. Henkel,* 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was director. The Court held that, "bail should not ordinarily be granted in cases of foreign extradition ...". *Id.* at 63, 23 S.Ct. at 787.

The Court in *Wright* noted:

The demanding government, when it has done all that the treaty and law require it to do, is entitled to delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id.* at 62, 23 S.Ct. at 786.

"The courts that have interpreted *Wright v. Henkel,* generally agree that there is a presumption against bail in an extradition case and that the defendant facing the extradition hearing has the burden of establishing special circumstances in order for a court to order pre-hearing conditional release." *United States v. Taitz,* 130 F.R.D. 442, 444

(S.D.Cal.1990). The Ninth Circuit Court of Appeals has also adopted the position that bail should not usually be permitted in foreign extradition cases. *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989).

## IV

### *The Application of the Special Circumstances Rule*

 In order to avoid the potential harshness of an absolute prohibition on bail, the courts, relying on language in *Wright v. Henkel,* have carved out a limited exception to the general prohibition against bail, termed "special circumstances." "A person subject to international extradition may overcome the presumption against bail by presenting clear and convincing evidence demonstrating 'special circumstances' justifying release pending extradition proceedings and that the person will not flee or pose a danger to any other person or to the community." *Matter of Extradition of Nacif–Borge,* 829 F.Supp. 1210, 1215 (D.Nev.1993). As Judge Learned Hand explained, this exception "should be exercised only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *In re Mitchell,* 171 F. 289, 290 (S.D.N.Y. 1909). This standard of "special circumstances" for release on bail for persons involved in a foreign extradition proceeding "is a more demanding standard that for ordinary accused criminals awaiting trial." *Hu Yau–Leung v. Soscia,* 649 F.2d 914, 920 (2d Cir.1981), *cert. denied,* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981). Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition. *Extradition of Smyth,* 976 F.2d 1535, 1535–36 (9th Cir.1992). In addition, the Extraditee must provide "clear and convincing evidence" of special circumstances. *Matter of Extradition of Nacif–Borge,* 829 F.Supp. 1210, 1215 (D.Nev.1993).

The term "special circumstances" has never been precisely defined and courts have addressed on a case by case basis particularly sufficient circumstances that would re-

verse the strong presumption against bail. The government concedes here that Valdez could show a "special circumstance" by submitting proof of a "substantial claim upon which extraditee has a high probability of success." *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989). However, the government disputes the likelihood of success by Mr. Valdez in this case. Valdez contends that he has a high probability of successfully defeating any extradition on the firearms charges due to lack of dual criminality.[2]

The focus of dual criminality is not on the definition of the offense in the requesting country but rather on whether the alleged conduct is a crime in both jurisdictions. *United States v. Levy,* 905 F.2d 326, 328 (10th Cir.1990), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 759, 112 L.Ed.2d 778 (1991); *Spatola v. United States,* 925 F.2d 615, 619 (2d Cir.1991).

The government asserts that the basis for the dual criminality analysis in this case lies in the statutes of the State of California. Specifically, that California state law, Penal Code section 12280 prohibits certain assault weapons identified under Penal Code section 12276. In addition, section 12280(a) and section 12280(b) prohibit the possession of an assault weapon. These weapons include rifles, shotguns and eleven different pistols.[3] Finally, an exemption is provided under section 12280(f)(5) for "law enforcement and military agencies of the state." Hence, California statutory scheme is analogue to the subject law of the Republic of Mexico, since, under Mexican laws, guns which are larger than .22 caliber weapons are proscribed as exclusively for use by the armed forces.

The government states that although these two sections of the California Penal Code do not prohibit the exact same weapons, they both regulate the possession of firearm pistols which are determined to be so powerful as to constitute a weapon of war or mass violence. While the particulars of the scope of the statutes may differ, they both proscribe the possession and transportation of weapons which are determined to be for as-

---

**2.** See footnote 1.

**3.** There is no evidence that the gun involved in these proceedings is listed in the statute.

sault purposes. Accordingly, the alleged conduct i.e., the transporting and carrying of firearms which are utilized for assault purposes, is a criminal act in the United States, as well as the Republic of Mexico.

 The Court cannot accept this analysis. There is no evidence that the subject .38 caliber firearm is of the type classified as "so powerful to constitute a weapon of war or mass violence". The Court can not agree to this leap of interpretation in an attempt to analogize the California statutory scheme to that of the Republic of Mexico. In concentrating, specifically, on the alleged conduct, this Court does not find that carrying a .38 caliber weapon would be a crime under the California Penal Code absent other factors or elements. By analogy, in the related extradition proceeding concerning Alfredo Hodoyan–Palacios, Mr. Palacios' possession of an AK–47 (a weapon generally characterized as an assault weapon) was not sufficient to support a criminal charge in the United States absent the fact that he was a drug user. Simply stated, the Court finds that possession of firearms reserved for the military is not an offense that is covered by the firearms statutes of the United States, including the statutes of the State of California, and therefore, it is highly unlikely that the dual criminality test could be satisfied in this case. At this stage, therefore, the Court would find that Mr. Valdez has a high probability of success with regard to the dual criminality issue relative to the firearm's charge. Of course, given the proffer supported by the declaration of Mr. Ruiz, and the sworn affidavit of the Assistant U.S. Attorney in support of the supplemental complaint for provisional arrest, the high probability of success on the dual criminality issue as to the firearm's charge would not be sufficient to create a special circumstance in support of bail in this case. Unlike the gun charges, there is no question that criminal conspiracy with homicide as a factor is an offense recognized under the subject treaty and that the criminal conspiracy with homicide as a factor passes the "dual criminality" test. Thus, Valdez does not have a high likelihood of prevailing overall in these extradition proceedings.

Absent a finding of "special circumstances", it becomes unnecessary to assess the risk of flight in this case. It is clear in the Ninth Circuit that special circumstances must exist *in addition* to absence of risk of flight. *United States v. Taitz*, 130 F.R.D. at 444.

## V

### *The Ruiz Declaration and Homicide Charges*

 At the bail hearing, Mr. Valdez challenged the Declaration of Mr. Ruiz as hearsay as it regards the homicide charges that are now the focus of the Supplemental Complaint. Mr. Valdez suggests that the information contained in the Declaration was induced by physical coercion of the Mexican authorities. Mr. Valdez seeks the Court's Order requiring the government to produce the first hand information and witnesses upon which they relied to make the proffer and in support of the Ruiz Declaration. Certainly, the same argument could be made to the factual allegations set forth in the Supplemental Complaint. In support of the motion, Valdez cites the Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.* and specifically, § 3142(f)(2), as well as case law relative to detention hearings. Finally, the principles of *United States v. Winsor*, 785 F.2d 755 (9th Cir.1986) are submitted, as authority.

It is quite clear that the Bail Reform Act of 1984 does not apply to extradition to foreign countries. *See Kamrin v. United States*, 725 F.2d 1225, 1227–28 (9th Cir.1984) (the "special circumstances" requirement for bail in extradition proceedings creates a different standard than that generally applied to federal criminal cases); *In re Extradition of Siegmund*, 887 F.Supp. 1383, 1384 (D.Nev. 1995) (the power to make bail in an extradition proceeding is within the general power of the magistrate judge to conduct extradition matters, as the Bail Reform Act does not apply); *In re Extradition of Rouvier*, 839 F.Supp. 537, 539 (N.D.Ill.1993) ("Because an extradition proceeding is not a criminal case, the Bail Reform Act of 1984 does not govern."). Therefore, the Court is not bound by

any discussion in § 3141(f)(2) regarding the evidence to be taken.

In *Winsor,* the Court discusses the hearing requirements relative to an analysis under § 3142(f)(2) of the Bail Reform Act. As stated herein, the Bail Reform Act of 1984 does not apply and *Winsor* is not clear authority for Defendants position in this regard. It is more helpful to this analysis, to examine the issue of bail proceedings as it specifically relates to extradition proceedings.

In *In re Extradition of Rouvier,* 839 F.Supp. at 542, n. 10, the court specifically noted that "persons challenging extradition have only a limited right to challenge the evidence against them." In *Rouvier,* the petitioner argued that there were several factors justifying the finding of "special circumstances" and the setting of bail pending extradition. One of the factors was the petitioner's contention that the information in the underlying affidavit was false. Although the court permitted the introduction of an affidavit offered by petitioner setting forth the falsity of the information in the affidavit, no further evidence on this point was presented. The court noted in addressing the insufficiency of the contradictory evidence in establishing "special circumstances" for the setting of bail that petitioner's right to challenge evidence against him in the extradition proceedings was limited.

The court in *Rouvier* relied on the case of *Sahagian v. United States,* 864 F.2d 509 (7th Cir.1988). In *Sahagian,* plaintiff sued the federal government for constitutional violations allegedly occurring from his detention in Spain pending extradition back to the United States. Although the case deals with extradition rights generally, it gives an outline of the accused's rights in the course of an extradition proceeding.

> Sahagian apparently confuses an extradition proceeding with a criminal prosecution. Extradition is simply a procedure by which one sovereign nation turns over custody of a person pursuant to a request from another sovereign nation. As such, the courts have routinely rejected arguments that extradition proceedings are

'criminal prosecutions' subject to all the rights attendant to such proceedings.

*Id.* at 513. In discussing the fact that the Constitution and rights guaranteed thereunder are generally not implicated in extradition proceedings, the court pointed to cases finding there is a general presumption against bail. Further, "[a]n accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of the credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof." *Id.* at 514, n. 6 (quoting *Eain v. Wilkes,* 641 F.2d 504, 511 (7th Cir.) *cert. denied,* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981)).

Based on the foregoing, the Court will not order the production of live witnesses by the government in support of their proffer relative to the bail issue.

## VI

### *Conclusion*

For all of the reasons set forth herein, the extraditee's motion for bail is denied.

IT IS SO ORDERED.