**Philipe HABABOU, Petitioner,**

v.

**Madeline ALBRIGHT, Secretary of State, Respondent.**

**No. CIV. 99–3738(JBS).**

United States District Court,
D. New Jersey.

Feb. 2, 2000.

Raymond A. Brown, Brown and Brown, P.C. and Alan Dexter Bowman, P.A., Newark NJ, for Petitioner.

John E. Harris, Acting Director, Office of Intern. Affairs, Criminal Div., by Patricia J. Reedy, Trial Attorney, U.S. Department of Justice, Washington DC, for Respondent.

## OPINION

SIMANDLE, District Judge.

In this case the Court is called upon to decide whether new domestic criminal charges can justify the United States government's continued detention of an individual on an extradition warrant even after he has agreed to surrender to the French government. For reasons discussed herein, the Court finds that the deadline for extradition pursuant to 18 U.S.C. § 3188, which provides that an individual ordinarily must be delivered to the demanding government within two months of surrender, must be applied in light of the governing Extradition Treaty between the United States and France, and that the United States has demonstrated sufficient cause for petitioner's continued detention while awaiting completion of his federal criminal trial.

This matter has been brought before the Court on application of petitioner Philipe Hababou for habeas corpus relief pursuant to 28 U.S.C. § 2255. Hababou, an inmate at the Union County Jail in Elizabeth, New Jersey, who moves this Court to set bail or release him from custody pending his extradition to France, where he was convicted *in absentia* of fencing stolen money, falsification of checks and using falsified checks.

The gravamen of petitioner's argument is that the extradition complaint should be dismissed because he was not surrendered to France within two calendar months as provided by the Extradition Act, 18 U.S.C. § 3188. However, simple inertia is not the reason for petitioner's continued detention in this country. Rather, petitioner has been detained because, after the Secretary of State issued the warrant for surrender

at the conclusion of Hababou's extradition proceedings on May 25, 1999, the United States indicted Hababou on securities fraud charges on June 18, 1999. As a result, the government seeks his detention here until the domestic prosecution— which is complex and is not scheduled for trial until six months from now—is complete. The primary issues for decision in this petition, therefore, are (1) whether petitioner is entitled to release under 18 U.S.C. § 3188, and (2) whether petitioner has argued sufficient "special circumstances" to compel his release on bail because his trial on domestic charges has been delayed. For reasons discussed herein, the Court will resolve both questions in favor of the respondent, and will deny petitioner's motion for habeas relief.

## I. BACKGROUND

According to the record before the Court, petitioner was arrested in the District of New Jersey on December 23, 1998, for extradition to France, where he was convicted *in absentia* for fencing stolen money, falsification of checks and using falsified checks. (Resp't's Br. at 2.) On December 28, 1998, U.S. Magistrate Judge Joel B. Rosen ordered petitioner detained without bond. *Id.* At petitioner's counsel's request, the extradition hearing on the French charges was continued on at least two occasions. *Id.* On March 18, 1999, the court held the extradition hearing, and on April 1, 1999, Judge Rosen certified petitioner's extraditability and committed him to the custody of the United States Marshals Service pending surrender in accordance with 18 U.S.C. § 3181. (Resp't's Ex. A.) On April 19, 1999, petitioner notified the court that he waived all rights to a habeas corpus petition or any other appeal of the extradition and requested that he be returned to France immediately. (Resp't's Ex. B.)

Subsequently, on May 5, 1999, the Department of State requested assurances from the Government of France that petitioner will receive a new trial, if requested,

because he was tried *in absentia.* (Resp't's Ex. C.) On May 21, the French government stated that petitioner will receive a new trial, if requested. (Resp't's Ex. D.) With assurances in place, the Department of State issued a surrender warrant on May 25, 1999. (Resp't's Ex. E.)

On May 29, 1999, the United States Attorney's Office for the District of New Jersey filed a complaint against petitioner alleging twenty-three counts of securities fraud. (Resp't's Ex. F.) A hearing on the U.S. charges was held on June 11, 1999. At that time, petitioner withdrew his request for bail on the U.S. charges. He was subsequently indicted on June 18, 1999, *United States v. Hababou,* 99–CR–336 (WGB)(D.N.J.).

On June 11, 1999, petitioner filed a Motion for Bail or Release Pending Disposition of Extradition Proceeding or, in the Alternative, For Dismissal of the Extradition Complaint before Magistrate Judge Rosen. On July 21, 1999, petitioner and the United States Attorney's Office consented to a continuance of the domestic trial until at least June 2000. Judge Rosen dismissed his motion without prejudice for lack of jurisdiction on July 29, 1999, and petitioner filed the instant petition for a writ of habeas corpus pursuant to 18 U.S.C. § 2255 on August 5, 1999.

## II. *DISCUSSION*

### A. *Jurisdiction*

Petitioner has filed this motion for release pursuant to 28 U.S.C. § 2255. The Court finds, however, that § 2255 is inapplicable, because that statute applies only to prisoners in custody under the sentence of a federal court. Mr. Hababou is not in custody pursuant to a sentence of a court of the United States, but rather under an extradition surrender warrant.

This Court has jurisdiction to review the lawfulness of this detention under the power of federal habeas corpus, as codified in 28 U.S.C. § 2241(c)(3), which extends relief to one who is held federal custody "in violation of the Constitution or laws or treaties of the United States."

### B. *Release Under 18 U.S.C. § 3188*

Petitioner first contends that his due process rights were denied when the United States did not deliver him to the Government of France within two months, and that the "United States delayed extradition beyond the allowed period by guile to facilitate the return of an indictment in this country." (Pet's Mem. at 1.) Petitioner asserts that due process requires that either the extradition hold be discharged or an extradition bail be fixed. *Id.* at 3.

Petitioner relies on 18 U.S.C. § 3188 as permitting bail or discharge of the extradition warrant. The statute provides:

> Whenever any person who is committed for rendition to a foreign government to remain until delivered up in pursuance of a requisition, is not so delivered up and conveyed out of the United States within two calendar months after such commitment, over and above the time actually required to convey the prisoner from the jail to which he was committed, by the readiest way, out of the United States, any judge of the United States, or of any State, upon application made to him by or on behalf of the person so committed, and upon proof made to him that reasonable notice of the intention to make such application has been given to the Secretary of State, may order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered.

18 U.S.C. § 3188. While the statute permits discharge out of custody of the person committed for rendition to the foreign government, it is silent on permitting release of the extraditee on bail. The statute does, however, contemplate an exercise of discretion by the court. *See Barrett v. United States,* 590 F.2d 624, 626 (6th Cir. 1978).

Originally enacted in 1848, § 3188 was "intended to implement our treaty obligations, without delay and the danger of a denial of justice to the accused." *Jimenez v. U.S. District Court,* 84

S.Ct. 14, 17, 11 L.Ed.2d 30 (1963). "Its purpose was to ensure prompt action by the extraditing government as well as by this government so that the accused does not suffer incarceration in this country or uncertainty as to his status for long periods of time through no fault of his own." *Id.* However, petitioner mistakenly relies on *Jimenez* for the proposition that he automatically should be delivered up to the foreign government within two months after commitment. (*See* Pet's Mem. at 5.) *Jimenez* says no such thing, and it is plain that the statute affords to the United States the burden to demonstrate sufficient cause to extend petitioner's detention.

If sufficient cause exists, then the court may not order petitioner's discharge. *See Barrett v. United States*, 590 F.2d 624 (6th Cir.1980). Here, the government alleges that sufficient cause exists because of the pendency of serious and complex domestic criminal charges.[1] Under such circumstances, the relevant treaty provision allows the government upon whom the extradition demand has been made to defer delivery of the person. Specifically, Article IX of the Extradition Treaty provides:

> If the person whose extradition may be claimed, pursuant to the stipulations hereof, be actually under prosecution for a crime or offence in the country where he has sought asylum, or shall have been convicted thereof, his extradition may be deferred until such proceedings be terminated, and until such criminal shall be set at liberty in due course of law.

Extradition Convention, Jan. 6, 1909, U.S.-Fr., art. IX, 37 Stat. 1526. Under this provision, the United States is permitted to delay extradition until the resolution of Hababou's pending charges.

Although petitioner contends that the "French government would be hard-pressed to treat a United States citizen in the fashion that this country has treated petitioner," (Pet's Mem. at 7), it is apparent that United States has demonstrated sufficient cause to delay surrender of petitioner to France for the reason that the United States has a strong interest in prosecuting the complex domestic criminal charges pending against petitioner. Indeed, the U.S.-France Treaty permits precisely such a delay in surrendering petitioner until final adjudication of domestic matters, and until he is set at liberty in due course of law. The Court finds that the delay of extradition to France by the United States violates no term of the Extradition Treaty, and is indeed anticipated by the Treaty in Article IX, above.

Petitioner contends that the fairest result would be to extradite him to France, and then return him to the United States after resolution of the matter in France. (Pet's Mem. at 4.) This suggestion is unpersuasive. Once petitioner is returned to France, he is not likely to be extradited back to the United States for trial on the pending domestic charges. Petitioner is a dual citizen of France and Israel, and under the Extradition Convention between the United States and France, there is "no obligation upon the requested State to grant the extradition of a person who is a

---

1. The twenty-three-count indictment, *United States v. Philippe Hababou*, 99–CR–336 (WGB) (D.N.J., filed June 18, 1999), alleges that Hababou, a/k/a "Haim Solomon," a/k/a "Malko" and an as-yet-unknown co-conspirator held themselves out as a mergers and acquisitions consultants and fraudulently acquired control of stock in Prime International Products, Inc. and thereafter sold that stock on the Over the Counter market, or OTC Bulletin Board, by making misrepresentations in connection with the value of such stock. (Indictment ¶¶ 1–7.) The indictment further alleges that Hababou and his co-conspirators gained approximately $5.3 million from the sale of this stock, which they then deposited by wire transfer in various accounts across North America. (*Id.* at ¶ 8.) The indictment charges, among other things, ten counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i) & 2, and twelve counts of filing false currency transaction reports in violation of 31 U.S.C. §§ 5324(a)(2) & 5324(c)(2) and related regulations. The indictment also seeks criminal forfeiture of Hababou's property up to $6.5 million pursuant to 18 U.S.C. § 982.

national of the requested State". U.S.-France Extradition Treaty, art. V; as amended by the Supplementary Convention with Exchanges of Letters, Feb. 12, 1970, art. III, 22 U.S.T. 407.

In the alternative, petitioner asserts that the extradition complaint should be dismissed because petitioner predicts that his detention for extradition will effectively eradicate any opportunity for bail on the U.S. indictment. (Pet's *Mem.* at 6.) Petitioner asserts that this result is "fundamentally unfair in view of petitioner's clear attributes militating in favor of bail." *Id.* As discussed below, however, petitioner has failed to demonstrate those "clear attributes militating in favor of bail" in the form of "special circumstances."

The United States' obligation to France under the Extradition Convention is to deliver the extraditees to France, so long as the conditions as set out in the treaty are satisfied. This Court finds that the treaty is satisfied by the continued detention of petitioner and the deferral of his extradition to France pending resolution of his new indictment in the United States.

## C. *Special Circumstances Justifying Release on Bail*

▮ Petitioner also asserts that "special circumstances" exist for his release on bail, specifically, on the grounds that his domestic trial has been continued until the Summer of 2000. (Pet's Mem. at 6.) Petitioner contends that the delay of at least a year requires that bail be fixed in the extradition proceedings. *Id.* at 7.

▮ There is a presumption against bail in extradition cases and only "special circumstances" justify release on bail. *Wright v. Henkel,* 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *United States v. Kin–Hong,* 83 F.3d 523, 524 (1st Cir.1996) (per curiam). Special circumstances are limited to those situations in which the justification for release is pressing as well as plain. *Id.* Special circumstances may include a delayed extradition hearing, *United States v. Williams,* 611 F.2d 914, 915 (1st Cir.1979), the raising of substantial claims against extradition on which the petitioner has a high probability of success, a serious deterioration in the relator's health, or an unusual delay in the appeals process, *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989); *In re Extradition of Siegmund,* 887 F.Supp. 1383, 1385–86 (D.Nev.1995); *United States v. Taitz,* 130 F.R.D. 442, 444–45 (S.D.Cal. 1990). Petitioner has not presented any of the aforementioned scenarios in the present motion. Specifically, he points only to the delay in the trial on the domestic charges of securities fraud, money laundering and false currency transactions, as evidence of special circumstances. That the upcoming trial is of such a scope and complexity that additional time is needed to adequately prepare for its commencement in six months' time is a greater reason, not a lesser one, for pretrial detention pending extradition. Hababou has the unhappy plight of facing two sets of charges before two sovereigns arising from his allegedly far-flung illegal financial activities. Moreover, the delay of the federal trial cannot be a special circumstance justifying bail when both parties have jointly agreed to a continuance of the domestic trial.[2]

▮ Petitioner also contends that his continued detention has hampered his ability to meaningfully participate in his defense, and that he should be given the opportunity to post bail. Generally, however, courts have found that pending civil litigation is not sufficient to constitute a "special circumstance" to warrant release on bail during an extradition proceeding. *See In the Matter of Extradition of Robert Henry Russell,* 805 F.2d 1215, 1217 (5th

---

**2.** Moreover, federal law assures that there will be no undue delay in the domestic trial by virtue of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* Pursuant to the Speedy Trial Order approved on July 21, 1999, the time for pretrial preparation and motion practice in the domestic case was enlarged to June 13, 2000. *United States v. Hababou, supra,* Order filed July 21, 1999.

Cir.1986). While petitioner is being detained on criminal, rather than civil, charges, petitioner offers no reason why the presumption that pending charges are not a "special circumstance" should be different in the criminal context.

The rationale for not ordinarily granting bail in extradition cases is that extradition cases involve an overriding national interest in complying with treaty obligations. *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D.Calif.1990). "If the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *Id.*

Additionally, petitioner contends that he is not a flight risk and is "not a fugitive in the sense of one who flees from criminal charges." (Pet's Mem. at 7.) Petitioner asserts that he left France prior to being charged and notified of the trial. *Id.* Petitioner also asserts that he has resided in New York City since he came to the United States in 1995. *Id.* The Government counters that petitioner has access to safe havens, potential access to large sums of money, the means to travel, and ties to Israel and Switzerland, and is thus a flight risk. (*Resp't's* Br at 9.)

■ This Court does not find an absence of flight risk. To the contrary, based on the seriousness of the domestic charges, and based on petitioner's financial wherewithal and potential international safe harbors, there would be enormous incentive and opportunity to flee. Moreover, in extradition matters, even the absence of risk of flight is not a legally cognizable "special circumstance" to justify release on bail in extradition cases. *See United States v. Taitz,* 130 F.R.D. at 444–445; *Salerno v. United States, supra* (holding that absence of flight risk is not criteria for release in an extradition case); *United States v. Williams, supra* (determining that an applicant's arguable acceptability as a tolerable bail risk is not a special circumstance).

Petitioner has failed to overcome the presumption against bail by providing an instance of "special circumstances" in a case involving extradition. Petitioner was born in French Tunisia and raised in England and France. (Pet's Mem. at 7.) He maintains both French and Israeli citizenship. *Id.* His wife is a Swiss citizen. *Id.* Petitioner also has two children, one of whom is a Swiss citizen, and the other is a citizen of both the United States and Switzerland. *Id.* Based on the foregoing, The Court finds that petitioner's copious international contacts make him a flight risk. Moreover, as discussed above, even assuming that petitioner is not a flight risk, that reason alone is insufficient to overcome the presumption against bail.

Based on the considerations set forth above, this Court does not find "special circumstances" present which would justify release of petitioner pending his prosecution on domestic charges. Accordingly, the Court holds that petitioner is lawfully being held pending prosecution of domestic criminal charges and subsequent extradition to France.

### CONCLUSION

For the reasons stated herein, Petitioner's application for writ of habeas corpus is denied. The accompanying Order is entered.

### ORDER

**THIS MATTER** having been brought before this Court on application of petitioner Philipe Hababou for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, which has been adjudicated pursuant to 28 U.S.C. § 2241 and 18 U.S.C. § 3188, and this Court having considered the submissions of the parties; and for the reasons stated in the Opinion of today's date;

IT IS on this ____ day of December, 1999, hereby

**ORDERED** that the petition of Philipe Hababou for a writ of habeas corpus, be, and hereby is **DENIED;** and

IT IS FURTHER ORDERED that petitioner's application for bail pending extradition shall be, and hereby is, **DENIED;** and

IT IS FURTHER ORDERED that no certificate of appealability shall issue under 28 U.S.C. § 2253(c)(1), petitioner having failed to make a substantial showing of the denial of a constitutional right.