**In the Matter of the EXTRADITION OF Duane Lee CHAPMAN a/k/a Duane Leg Chapman a/k/a Duane Chapman a/k/a Dog Chapman a/k/a Dog**

**In the Matter of the Extradition of Leland Blane Chapman a/k/a Blane Chapman Leland**

**In the Matter of the Extradition of Timothy Charles Chapman a/k/a Charles Chapman Timothy.**

**Nos. 06–00186–SOM/BMK, 06–00187–SOM/BMK, 06–00188–SOM/BMK.**

United States District Court, D. Hawai'i.

Oct. 26, 2006.

---

Ronald G. Johnson, Assistant U.S. Attorney, Office of the U.S. Attorney, Honolulu, HI, for Plaintiff.

Brook Hart, Honolulu, HI, Allen R. Wolff, Carlsmith Ball, LLP, Honolulu, HI, James E. Blancarte, Carlsmith Ball LLP, Los Angeles, CA, for Defendants.

*ORDER GRANTING RESPONDENTS DUANE LEE CHAPMAN, LELAND BLANE CHAPMAN, AND TIMOTHY CHARLES CHAPMAN'S MOTION FOR RELEASE ON BAIL PENDING EXTRADITION AND FOR FINDING OF SPECIAL CIRCUMSTANCES*

KURREN, United States Magistrate Judge.

Before this Court is Respondents Duane Lee Chapman, Leland Blane Chapman, and Timothy Charles Chapman's Motion For Release On Bail Pending Extradition And For Finding of Special Circumstances ("Motion"). This Motion was heard on September 15, 2006. After careful consideration of the Motion, supporting and opposing memoranda, and arguments of counsel, the Court GRANTS this Motion. Respondents are released on bail until final resolution of the extradition proceedings.

## BACKGROUND

Respondents Duane Lee Chapman, Leland Blane Chapman, and Timothy Charles Chapman are bail bondsmen and residents of Hawaii. Each operates a licensed bail bond agency in Hawaii.[1] All three have significant family ties to Hawaii.[2]

Most notably, the three Respondents are featured on the cable television program "Dog: The Bounty Hunter." This program chronicles Respondents' efforts to track down fugitives and airs three times per week on the cable channel A & E. While tracking down these fugitives, Respondents are often depicted exhorting the fugitives to turn their lives around and to comply with the law. Now in its third season, "Dog: The Bounty Hunter" is currently the most popular show on A & E and attracts millions of viewers each week. Because of their television program, all three Respondents are nationally and internationally known public figures.[3] The television program is highly lucrative for

1. Duane Lee Chapman operates Da Kine Bail Bonds in Honolulu; Leland Blane Chapman operates Da Kine Bail Bonds in Kona; Timothy Charles Chapman operates Island Bail Bonds in Honolulu.

2. Leland Blane Chapman lives in Honolulu with his wife, five of his twelve children, and two of his grandchildren. Timothy Charles

Chapman also lives in Honolulu with his fiancé and their two children. Duane Lee Chapman lives in Kona; he is married and has two children living in Hawaii.

3. Moreover, they are particularly recognizable public figures because of their distinctive appearances and manner of dress.

Respondents and is also the source of their significant popularity.

The present matter arises from an incident that occurred in Mexico over three years ago. On June 18, 2003, Respondents captured American fugitive Andrew Luster in Mexico. Luster had been brought to trial in California in 2002 on sexual assault, drug, and weapons offenses. During trial, Luster fled the country and was convicted in absentia. He was sentenced to 124 years in prison for eighty-six offenses. Luster successfully evaded law enforcement officials for six months. In June, 2003, Respondents tracked Luster to Puerto Vallarta, Mexico, and captured him. They then attempted to take him back to the United States.

While trying to leave Mexico, Respondents were detained by Mexican authorities. After posting bail, Respondents returned to the United States. Luster was eventually deported to the United States where he is now in prison; nonetheless, Respondents were charged with the false imprisonment of Luster. A warrant for their arrest was issued in Mexico on July 15, 2003, by the First Criminal Court Judge of the Twenty–Seventh Judicial District of Puerto Vallarta, Jalisco. The offense of false imprisonment is codified by Article 193 of the Criminal Code of Jalisco. It is punishable by imprisonment of six months to four years. Mexico now requests extradition of the Respondents from the United States pursuant to the Extradition Treaty between the two countries, 31 U.S.T. 5095, T.I.A.S. 9656.

This Court issued an arrest warrant for Respondents on September 13, 2006, pursuant to 18 U.S.C. § 3184, the federal legislation implementing extradition treaties. Respondents were arrested in Honolulu on September 14. Respondents now await a hearing before this Court to determine whether they may be extradited; they move this Court for release on bail pending extradition.

## RELEVANT LAW

■ In international extradition cases, there is a presumption against bail. *Wright v. Henkel,* 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948 (1903). This presumption can be overcome, however, where there are "special circumstances." *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir.1989). A court should first ascertain "whether there is a risk of flight. If no such risk exists, the court then determines whether any 'special circumstances' exist." *United States v. Taitz,* 130 F.R.D. 442, 445 (S.D.Cal.1990).

Courts have found a variety of special circumstances justifying release on bail in extradition cases. One special circumstance is a high probability of "lengthy delays ... as a result of the actual extradition proceedings themselves and the appeals therefrom." *In re Kirby,* 106 F.3d 855, 863 (9th Cir.1996); *see also Taitz,* 130 F.R.D. at 446 (finding a special circumstance justifying release where delays were expected in a final resolution of the extradition proceeding); *Salerno,* 878 F.2d at 317 (stating that an "unusual delay in the appeal process" can be a special circumstance). Another special circumstance is where "[t]here is no allegation that [the respondent] is a danger to any community on the basis of violence or continuing criminal conduct." *Taitz,* 130 F.R.D. at 446. Likewise, a special circumstance is present where "the diplomatic necessity for denying bail does not exist." *Id.* Special circumstances can also include "the raising of substantial claims upon which the appellant has a high probability of success" as well as "a serious deterioration of health while incarcerated." *Salerno,* 878 F.2d at 317.

## DISCUSSION

■ Respondents ask that bail be granted because they pose no risk of flight and because special circumstances exist which justify their release. The United States, acting on behalf of Mexico, argues that bail should be denied because special circumstances do not exist. This Court finds that Respondents do not pose a risk of flight and that special circumstances justify granting bail.

First, the Respondents here do not pose a risk of flight. Just as Taitz had "substantial family ties" to the area, *Taitz,* 130 F.R.D. at 445, so here do the Respondents. Each of the three Respondents have households, children and significant financial interests in Hawaii. Not only do they have their bail bond businesses here, but they also film their lucrative and popular television show in Hawaii. The Respondents are visible, well-known public figures who could not easily go into hiding. Finally, the bail itself, as in *Taitz, id.,* will present a significant financial deterrent to flight.

Second, three special circumstances exist which merit releasing the Respondents on bail. First, there is a high probability of delay in the extradition proceedings. Because the underlying offense occurred more than three years ago, it may be difficult to track down witnesses and prepare evidence for the hearing. Second, Respondents pose no danger to any community on the basis of violence or criminal conduct. To the contrary, Respondents' livelihoods and public images rest on their commitment to upholding the law. Third, there is a lack of any diplomatic necessity for denying bail. Mexico has not made prosecution of this offense a priority. Mexico waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously, aware of the charges against them in Mexico.

Furthermore, beyond these three special circumstances well-documented by the case law, an additional factor weighs heavily in Respondents' favor: their complete lack of flight risk. While this Court recognizes lack of flight risk as the initial threshold Respondents must cross, it is such a prominent aspect of this case that it rises to the level of a special circumstance in and of itself.

While lack of flight risk is not *"the* criteria for release in an extradition case," *Salerno,* 878 F.2d at 318 (emphasis added), several courts have found it to be an important factor in granting bail. *See United States v. Messina,* 566 F.Supp. 740, 743 (E.D.N.Y.1983) (recognizing that being "good bail risks" might qualify as a special circumstance); *Beaulieu v. Hartigan,* 430 F.Supp. 915, 917 (430 F.Supp. 915, 917) (stating that "one of the basic questions facing a district judge ... is whether, under all circumstances, the petitioner is likely to return to court when directed to do so") *rev'd mem.,* 553 F.2d 92 (1st Cir.1977).

More recent cases in the Ninth Circuit also indicate the increasing importance of the flight risk determination. This primary threshold consideration becomes more crucial with the diminishing importance of the secondary "special circumstances" determination. *See In Re Kirby,* 106 F.3d at 864 (finding that bail was warranted "notwithstanding the weaknesses of the 'special circumstances' upon which the district court relied").

Respondents pose no risk of flight. They have dedicated their lives to pursuing fugitives. This is not only their livelihood, but the core of their public personae. That they themselves would become fugitives from justice seems highly unlikely. They would lose not only enormous future earnings from their television program,

but they would lose their own identities and their popularity. This must be taken into account as a special circumstance in favor of granting bail.

### CONDITIONS OF RELEASE

Respondents are released pending the resolution of the extradition proceedings against them. The following conditions of release are imposed:

Duane Lee Chapman is required to post a bond of $300,000. This may be posted in cash, or may be secured by a Corporate Surety Bond. Timothy Charles Chapman is required to post a bond of $100,000. This may be posted in cash, or may be secured by a Corporate Surety Bond. Leland Blane Chapman is also required to post a bond of $100,000. This also may be posted in cash, or may be secured by a Corporate Surety Bond.

All three Respondents must comply with Pretrial Services' supervision and abide by all conditions of release directed by Pretrial Services.

Respondents' travel is restricted to the State of Hawaii and inter-island travel must be approved in advance by Pretrial Services. Respondents cannot change their residence without the advance approval of Pretrial Services. Respondents are prohibited from owning, possessing, or controlling any firearm or ammunition. Respondents must contribute toward the costs of the services required to the extent they are financially able to do so, as determined by Pretrial Services.

In addition, Duane Lee Chapman and Timothy Charles Chapman shall surrender their passports by 12:00 p.m. on Monday, September 18. Leland Blane Chapman shall surrender his passport by 12:00 p.m. on Tuesday, September 19. Divina Natasha Faletoi shall serve as the third-party custodian of Timothy Charles Chapman.

Pretrial Services shall determine appropriate third-party custodians for Duane Lee Chapman and Leland Blane Chapman.

Respondents shall also comply with an electronic monitoring program under the direction of Pretrial Services. They are restricted to their respective residences at all times except as pre-approved by Pretrial Services.

Finally, Respondents shall not commit any offense in violation of federal, state, or local law while on release in this case. Respondents shall also appear at all proceedings as required. Respondents may continue to operate their bail bonds businesses and may continue to film their television program.

### CONCLUSION

For the reasons stated above, the Court GRANTS Respondents' Motion. Respondents are released according to the terms discussed above.

IT IS SO ORDERED.